AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO, peticionaria, *v.* RAYMOND RIVERA FUENTES, recurrido.

*Número:* CC-2003-629.      *Resuelto:* 16 de febrero de 2006

*Joanna Costas Vázquez*, abogada de la parte peticionaria; *Héctor Alvarado Tizol* y *José R. Feijóo Rodríguez*, abogados de la parte recurrida.

## SENTENCIA

La Autoridad de Energía Eléctrica recurre ante nos para cuestionar una decisión del Tribunal de Apelaciones que desestimó un recurso de revisión por prematuro. El foro apelativo intermedio resolvió que la determinación del Oficial Examinador no era la decisión final de la agencia.

La controversia del caso de autos fue resuelta recientemente por este Tribunal en *Tosado v. A.E.E.*, 165 D.P.R. 377 (2005). En dicho caso, concluimos que la determinación del Oficial Examinador de la Autoridad de Energía Eléctrica era la decisión final de la agencia y que, conforme dispone la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, era revisable por el Tribunal de Apelaciones. Al aplicar lo resuelto en *Tosado*

*v. A.E.E.*, supra, a este caso, procede revocar la sentencia dictada por el Tribunal de Apelaciones. Veamos.

I

El señor Raymond Rivera Fuentes es empleado de la Autoridad de Energía Eléctrica (A.E.E.) desde 1994, donde laboraba como Supervisor de Asuntos de Mecanización de Telecomunicaciones, División de Operaciones, puesto ubicado en Monacillos. Durante el año 2000, dicha corporación pública realizó un Estudio Organizacional del Área Administrativa de la División de Operación del Sistema Eléctrico (Estudio Organizacional), para identificar posibles cambios y mejorar así la eficiencia y la utilización de los recursos disponibles.

Tras evaluar las recomendaciones presentadas en el Estudio Organizacional, la A.E.E. le envió una carta al señor Rivera Fuentes en la que le notificó que se proponía reclasificar su plaza y trasladarlo al puesto de Supervisor de Conservación de Estructuras y Terrenos del Sistema Eléctrico II en la División Central de Palo Seco. En su carta, la A.E.E. indicó al señor Rivera Fuentes que la reclasificación y el traslado se debieron a la reorganización de la agencia y a las necesidades de servicio del Directorado de Sistema Eléctrico, según le fue recomendado en el Estudio Organizacional realizado. Además, se le advirtió al señor Rivera Fuentes que tenía derecho a apelar la determinación mediante el Procedimiento de Querellas para Empleados de Carrera No Unionados[1] (Procedimiento de Querellas).

Posteriormente, el señor Rivera Fuentes contestó la misiva y, entre otras cosas, adujo que el traslado y la reclasificación no se justificaban conforme al Reglamento de Personal para Empleados de Carrera No Unionados (Reglamento) de la Autoridad de Energía Eléctrica, por lo

---

[1] Revisado el 5 de mayo de 1994.

que solicitó que se le reinstalara en su puesto de Supervisor de Asuntos de Mecanización de Telecomunicaciones en Monacillos. Tras cumplir con los trámites procesales requeridos en el Procedimiento de Querellas, las partes sometieron sus memorandos de derecho y el asunto se le refirió al Lcdo. José Roberto Feijóo, Oficial Examinador de la A.E.E. contratado para atender la querella.

Luego de celebrada la vista evidenciaria, el Oficial Examinador declaró "con lugar" la querella incoada. Concluyó que el traslado era nulo conforme al Reglamento, que no obedeció a ninguna necesidad de servicio y que era contrario al propio Estudio Organizacional de la agencia. En consecuencia, ordenó la restitución del señor Rivera Fuentes a su puesto original, con todos los derechos, beneficios y privilegios que tuviera previo a la presentación de la querella.

Insatisfecha, la A.E.E. acudió ante el Tribunal de Apelaciones mediante un recurso de revisión. Alegó que el Oficial Examinador erró al determinar que el traslado no obedeció a las necesidades de servicio de la agencia. El Tribunal de Apelaciones desestimó el recurso de revisión por considerar que la decisión administrativa no era final y que, por lo tanto, carecía de jurisdicción. Razonó que el Oficial Examinador que emitió la decisión no era empleado ni funcionario de la agencia, por lo que carecía de facultad para adjudicar la querella. El foro intermedio concluyó que la decisión del Oficial Examinador es una recomendación u opinión que tiene que ser avalada o adoptada por el Director Ejecutivo de la A.E.E. para que sea final.

Inconforme, la A.E.E. recurre ante este Tribunal. Alega que la decisión del Oficial Examinador es la determinación final de la agencia, por lo que erró el Tribunal de Apelaciones al desestimar el recurso de revisión por prematuro. Acordamos expedir. Las partes presentaron sus respectivos alegatos, por lo que procedemos a resolver con el beneficio de sus comparecencias.

## II

A. La Sec. 4.2 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.) dispone que el Tribunal de Apelaciones podrá revisar las decisiones finales de las agencias administrativas, mas no así las resoluciones interlocutorias. 3 L.P.R.A. sec. 2172. Además, la parte afectada adversamente que solicita la revisión debe haber agotado el remedio provisto por la agencia. *Tosado v. A.E.E.*, supra; *Procuradora Paciente v. MCS*, 163 D.P.R. 21 (2004). La decisión administrativa es final cuando ha decidido todas las controversias entre las partes y no deja alguna pendiente por decidir. D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed. rev., Bogotá, Ed. Forum, 2001, Sec. 9.3, pág. 533; *Tosado v. A.E.E.*, supra.

A pesar de que la L.P.A.U. no define lo que es una orden o resolución final, sí establece que éstas deberán incluir las determinaciones de hecho y las conclusiones de derecho que fundamentan la adjudicación. Además, la resolución final de la agencia deberá advertirle a la parte sobre la disponibilidad del recurso de reconsideración o de revisión judicial. Por último, el jefe de la agencia o cualquier otro funcionario autorizado por ley deberá firmar la resolución. 3 L.P.R.A. sec. 2164. "Dicha determinación final debe ser emitida 'por la última autoridad decisoria o adjudicativa de la agencia administrativa'." *Tosado v. A.E.E.*, supra, pág. 385, citando a *Bird Const. Corp. v. A.E.E.*, 152 D.P.R. 928, 936 (2000).

Con relación a quién tiene la autoridad para adjudicar las querellas presentadas ante las agencias, la Sec. 3.3 de la L.P.A.U. dispone lo siguiente:

> Toda agencia podrá designar oficiales examinadores para presidir los procedimientos de adjudicación que se celebren en

ella, los cuales no tendrán que ser necesariamente abogados, particularmente cuando el procedimiento en cuestión es uno informal.

El jefe de la agencia podrá delegar la autoridad de adjudicar a uno o más funcionarios o empleados de su agencia. A estos funcionarios o empleados se les designará con el título de jueces administrativos. 3 L.P.R.A. sec. 2153.

En *Tosado v. A.E.E.*, supra, recientemente tuvimos la oportunidad de expresarnos sobre el rol de los Oficiales Examinadores en el procedimiento de adjudicación de las querellas presentadas en las agencias. En aquel caso, al señor Tosado Cortés se le imputó haber violado unas normas de conducta de la A.E.E. Se celebró una vista administrativa presidida por un Oficial Examinador, quien, al amparo del Reglamento para los Procedimientos de Adjudicación de Querellas de la Autoridad,[2] concluyó que el empleado no había cometido la violación alegada. La A.E.E. acudió ante el Tribunal de Apelaciones para solicitar una revisión y ese foro desestimó el recurso por falta de jurisdicción. Razonó el foro apelativo intermedio que la resolución dictada por el Oficial Examinador no era final y que el recurso era prematuro.

La controversia ante nos en aquella ocasión era si el Oficial Examinador tenía la facultad para adjudicar de forma final la querella. Específicamente, resolvimos que

... al analizar la naturaleza de la decisión administrativa *no podemos considerar, exclusivamente, la denominación que se le ha dado al funcionario o empleado* que la emite dentro del esquema procesal administrativo. Es decir, *el título de oficial examinador o juez administrativo, sin más, no define el carácter de sus funciones y, por lo tanto, del producto de su trabajo.* Resulta imperativo, además, evaluar las facultades que le han sido delegadas y el tipo de decisión que éstos emiten. (Énfasis suplido.) *Tosado v. A.E.E.*, supra, págs. 386–387.

Conforme a lo anterior, en *Tosado v. A.E.E.*, supra, determinamos que el Oficial Examinador sí tenía poder para

---

[2] Reglamento Núm. 4109 de 12 de febrero de 1990.

adjudicar la querella. Concluimos que su determinación era la decisión final de la A.E.E. y que, como tal, era revisable por el Tribunal de Apelaciones.

Por último, resolvimos que el Director Ejecutivo de la A.E.E. puede delegar válidamente en otro funcionario el poder general de adjudicar. Para llegar a esta conclusión nos basamos mayormente en razones prácticas, porque resulta casi imposible que un jefe de agencia presida todas las vistas y adjudique todas las controversias presentadas ante la oficina que dirige. *Tosado v. A.E.E.*, supra, pág. 386, citando a Fernández Quiñones, *op. cit.*, Sec. 4.3, pág. 186; B. Schwartz, *Administrative Law*, 3ra ed., Boston, Ed. Little, Brown and Co., 1991, Sec. 6.11, pág. 324. Además, explicamos que, al delegar el poder de adjudicar este tipo de controversias, los involucrados se benefician del *expertise* del adjudicador y, a su vez, el director puede dedicar su tiempo a desarrollar la política pública que inspiró la creación de la agencia que dirige. *Tosado v. A.E.E.*, supra, citando a R.J. Pierce, *Administrative Law Treatise*, 4ta ed., Nueva York, Aspen Law and Bussiness, 2002, Sec. 8.6, pág. 552.

Con esto en mente, pasemos a analizar las facultades que poseía el Oficial Examinador en el caso de epígrafe.

B. La A.E.E. es una corporación pública e instrumentalidad autónoma del Estado Libre Asociado de Puerto Rico, cuya misión es aprovechar y conservar las fuentes fluviales y de energía eléctrica del país.[3] El organismo rector de la A.E.E. es su Junta de Gobierno, y este cuerpo designa al Director Ejecutivo de la instrumentalidad. Con el propósito de canalizar las controversias que se susciten con relación a los empleados gerenciales, la Junta de Gobierno de la A.E.E. promulgó el Procedimiento de Querellas antes mencionado.

---

[3] La Autoridad de Energía Eléctrica (A.E.E.) fue creada al amparo de la Ley Núm. 83 de 2 de mayo de 1941 (22 L.P.R.A. sec. 191 *et seq.*).

Según este procedimiento, la última etapa del trámite ante la agencia consiste en que las partes sometan el agravio a la consideración de un Oficial Examinador. En el Art. II(3) del Procedimiento de Querellas se define al Oficial Examinador de la forma siguiente:

> [a]bogado que no sea empleado de la Autoridad designado para oír la prueba presentada por las partes y emitir una decisión una vez sometido el caso. Se nombra de una lista de oficiales examinadores con experiencia preferiblemente en el campo laboral. Procedimiento de Querellas, *supra*, pág. 2.

Este procedimiento establece expresamente que, una vez evaluada la evidencia y las posiciones de las partes, el Oficial Examinador tendrá la facultad de emitir la decisión sobre el caso:

> El Oficial Examinador, a base del récord y de la evidencia presentada, emitirá su decisión conforme a derecho dentro de los treinta (30) días laborables luego de sometido el caso. Las decisiones se emitirán por escrito e incluirán separadamente determinaciones de hechos y de derecho. Art. VII del Procedimiento de Querellas, *supra*, pág. 9.

El Procedimiento de Querellas establece que estas decisiones se podrán revisar ante el Tribunal de Apelaciones, conforme dispone la L.P.A.U., siempre y cuando la parte que inste la revisión judicial notifique con copia al Oficial Examinador y al abogado de la parte contraria. Art. IX del Procedimiento de Querellas, *supra*. También establece cuáles son las funciones del Oficial Examinador, entre ellas: citar testigos y requerir la presentación de documentos (Art. V(1)); señalar las vistas y hacer todas sus notificaciones; juramentar a los testigos en las audiencias (Art. VI(2)); dirigir las vistas, y resolver todas las cuestiones de derecho y procesales que surjan, además de las referentes a la admisión o exclusión de prueba. También podrá conceder términos a las partes para someter sus alegatos (Art. VI(4)), y tendrá discreción para aplicar las reglas de evi-

dencia para "asegurar que los procedimientos sean justos y rápidos" (Art. VI(5), pág. 8).

La A.E.E. ha establecido en el Procedimiento de Querellas que el Oficial Examinador no puede ser empleado de la agencia para así garantizar que la adjudicación sea imparcial. Según surge del expediente, la A.E.E. contrata abogados externos que tengan experiencia en el campo de derecho laboral —algunos de estos ex jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones— para que diluciden las controversias presentadas por los empleados. Por último, el Art. X del Procedimiento de Querellas, *supra*, pág. 11, aclara que éste "se interpretará liberalmente, para permitir un proceso rápido, justo y equitativo para todas las partes".

Visto lo anterior, apliquemos el Derecho a los hechos del caso.

## III

Según hemos expuesto, en el Procedimiento de Querellas se le ha delegado al Oficial Examinador la facultad de adjudicar las querellas que se presenten al amparo del Reglamento, sin necesidad de un trámite procesal adicional. En vista de ello, y conforme a la doctrina establecida en *Tosado Cortés v. A.E.E.*, supra, resolvemos que la decisión del Oficial Examinador en este caso es la adjudicación final de la controversia, por lo que cumple con los requisitos para que lo revise el Tribunal de Apelaciones.

El foro apelativo intermedio sostiene que es una condición indispensable para la validez de la resolución que el adjudicador sea un funcionario o empleado de la agencia, y que la delegación a un abogado externo del poder de adjudicar es nula porque viola el texto expreso de la L.P.A.U. No podemos estar de acuerdo con esa conclusión.

Con relación al requisito de que el adjudicador de la querella sea "empleado o funcionario" de la agencia, en *To-*

*sado v. A.E.E.*, supra, pág. 395, resolvimos que "el oficial examinador, al descargar estas funciones propiamente administrativas, funge como un funcionario de la A.E.E.". Es decir, entendemos que la interpretación del foro apelativo intermedio sobre el significado de la clasificación "empleado o funcionario" es demasiado rígida. Al evaluar la finalidad de una decisión administrativa, no podemos importar el mismo análisis que utilizaríamos en un caso laboral tradicional para determinar si un trabajador posee o no derecho a ciertos beneficios marginales.(4) Simple y llanamente, la labor del Oficial Examinador en este caso redunda en un beneficio público, en particular para la agencia concernida, independientemente de que éste no forme parte de la nómina de empleados regulares de la A.E.E. Por consiguiente, puede ser considerado como un funcionario de esa agencia para fines de la Sec. 3.3 de la L.P.A.U., *supra.*

Además, debemos recordar que el propósito para el que se creó la A.E.E. no fue para adjudicar querellas sobre reclasificaciones y traslados de sus empleados, sino que esta corporación pública tiene una encomienda legislativa muy distinta, esta es, desarrollar, administrar y conservar las fuentes fluviales y de energía eléctrica del país. En cambio, la adjudicación de querellas presentadas por los empleados de esta instrumentalidad es una tarea necesaria, pero incidental a la misión principal de la A.E.E.

Se justifica por estas razones que el Director Ejecutivo delegue esta tarea a otros funcionarios especializados, capaces de evaluar y adjudicar las controversias de una forma imparcial, como lo son los abogados con experiencia en derecho laboral que contrata la A.E.E. Requerir que el adjudicador de las querellas sea un empleado o funcionario regular de la A.E.E. en nada garantiza que la adjudicación

---

(4) En este sentido, no se trata de determinar si el Oficial Examinador tiene derecho a vacaciones, a un seguro médico o si es contratista independiente para propósitos de la cubierta del Fondo del Seguro del Estado, entre otras consideraciones.

será imparcial, que en última instancia es la garantía principal de la L.P.A.U.[5]

Por último, en este caso es importante el hecho de que es la propia A.E.E. quien solicita la revisión de la determinación del Oficial Examinador. Esta actuación implica que la agencia, al aplicar su propio Reglamento y su Procedimiento de Querellas, parte de la premisa que este funcionario designado tiene poder para adjudicar la querella de forma final y que no queda trámite administrativo alguno por realizar. Esta interpretación merece nuestra deferencia.

En conclusión, la delegación expresa del poder de adjudicación al Oficial Examinador en el Procedimiento de Querellas es válida conforme a la L.P.A.U. y a lo resuelto en *Tosado v. A.E.E.*, supra. No es un requisito *sine qua non* que el adjudicador sea un funcionario o empleado regular de la agencia. Basta con que el Oficial Examinador ejerza las funciones propias del Director Ejecutivo de la A.E.E., por delegación de la agencia, en los procedimientos de adjudicación de querellas como el de autos.

En atención a lo anterior, entendemos que no es necesario requerir que el jefe de agencia tenga que acoger o avalar la decisión del Oficial Examinador para que ésta sea final y así concluir el trámite administrativo. Resolver de esta manera añadiría otro eslabón en el proceso y alargaría indebidamente el trámite de resolución de querellas. No debemos perder de perspectiva que los procedimientos ante las agencias administrativas deben ser ágiles y estar libres de escollos procesales innecesarios, de manera que se cumpla con el propósito cardinal de buscar la solución más justa, rápida y económica para las partes involucradas. 3 L.P.R.A. sec. 2163; *Otero v. Toyota*, 163 D.P.R. 716 (2005).

---

[5] Véanse, sobre el particular: Sec. 3.1 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2151; *Torres v. Junta Ingenieros*, 161 D.P.R. 696 (2004); *Magriz v. Empresas Nativas*, 143 D.P.R. 63, 70 (1997).

Por todo lo antes expuesto y conforme a lo resuelto en *Tosado v. A.E.E.*, supra, somos del criterio que al Oficial Examinador se le delegó válidamente el poder de adjudicar la querella incoada por el señor Rivera Fuentes al amparo del Reglamento y del Procedimiento de Querellas correspondiente. La determinación del Oficial Examinador es la decisión final de la agencia y no es necesario que el Director Ejecutivo de la A.E.E. la acoja para que el Tribunal de Apelaciones tenga jurisdicción sobre el recurso de revisión, puesto que en el caso de autos no queda trámite administrativo alguno por completar.

## IV

Por los fundamentos expresados, *revocamos la resolución del Tribunal de Apelaciones y devolvemos el caso a dicho foro para la continuación de los procedimientos de revisión de forma compatible con lo aquí resuelto.*

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rivera Pérez emitió una opinión disidente. El Juez Asociado Señor Rebollo López no intervino.

(*Fdo.*) Aida Ileana Oquendo Graulau
*Secretaria del Tribunal Supremo*

— O —

Opinión disidente emitida por el Juez Asociado Señor Rivera Pérez.

La mayoría concluye que la controversia del caso de autos fue resuelta recientemente por este Tribunal en *Tosado v. A.E.E.*, 165 D.P.R. 377 (2005). En dicho caso concluimos que la determinación del Oficial Examinador de la Autoridad de Energía Eléctrica (A.E.E.) era la decisión final de la

agencia y que, conforme dispone la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), era revisable por el tribunal apelativo. La mayoría expresa que, respecto al requisito estatutario de que el adjudicador de la querella tiene que ser "empleado o funcionario" de la agencia, en *Tosado Cortés v. A.E.E.*, supra, pág. 21, resolvimos que el "oficial examinador, al descargar estas funciones propiamente administrativas, funge como un funcionario de la A.E.E.". La mayoría concluye, además, que el Director Ejecutivo de la A.E.E. puede delegar la tarea administrativa de adjudicar las querellas presentadas por los empleados contra la agencia a personas que reconoce como especializadas en la materia, que no son sus "empleados o funcionarios". Después de reexaminar este asunto, creemos que el Tribunal se equivocó al resolver el caso *Tosado v. A.E.E.*, supra, por ser incorrecto lo allí pautado sobre ese aspecto. Por tal motivo, *DISIENTO* de este curso de acción. Un error no justifica otro error.

Mediante el recurso presentado ante nos se solicita la revocación de una resolución emitida por el Tribunal de Apelaciones. La resolución recurrida desestimó el recurso para revisar una decisión administrativa de la A.E.E. El foro intermedio apelativo entendió que el recurso presentado ante su consideración era prematuro, ya que no había concluido el trámite administrativo ante la agencia recurrida. Concluyó que el Oficial Examinador que emitió la decisión, quien no era empleado ni funcionario público, sino que fue contratado por dicha agencia de gobierno, carecía de la facultad para adjudicar la querella. Sostuvo que la decisión administrativa era una recomendación u opinión que, para ser final, tenía que ser avalada y adoptada por el Director Ejecutivo de la A.E.E., de acuerdo con la L.P.A.U. Veamos el cuadro fáctico que origina el presente recurso.

# I

El Sr. Raymond Rivera Fuentes presentó una querella contra la A.E.E., corporación pública para la que trabaja desde diciembre de 1994, en la cual cuestionó su reclasificación y traslado a la plaza de Supervisor de Conservación de Estructuras y Terrenos del Sistema Eléctrico II en la División Central de Palo Seco.[1] Previo al traslado, el señor Rivera Fuentes se desempeñaba como Supervisor de Asuntos de Mecanización de Telecomunicaciones en la División de Operación del Sistema Eléctrico. Este puesto estaba asignado al área de Monacillos.

Alegadamente, el traslado del querellante obedeció a las recomendaciones de un Estudio Organizacional del Área Administrativa de la División de Operación del Sistema Eléctrico.[2] El referido estudio incluyó el puesto del querellante aun cuando, conforme al organigrama sometido en evidencia, ese puesto pertenecía al área de telecomunicaciones y no al área administrativa en cuestión.[3]

Al cuestionar el traslado, el querellante adujo que éste no debió haber sido ordenado, pues se justificaba que su plaza permaneciera en el área de telecomunicaciones en lugar de clasificarla como "excedente", conforme a la recomendación del referido estudio organizacional. Asimismo, solicitó que se le reinstalara a su puesto de Supervisor de

---

[1] La querella fue presentada en conformidad con el Reglamento para Empleados de Carrera No Unionados de la Autoridad de Energía Eléctrica y canalizada según lo dispuesto en el Procedimiento de Querellas para Empleados de Carrera No Unionados.

[2] Dicho estudio fue realizado por el Departamento de Estudios y Procedimientos Corporativos el 14 de agosto de 2000, basado en la Sec. 1027.6.1 del Capítulo 100 del Manual Administrativo. El estudio organizacional tenía como propósito el evaluar la organización del área administrativa de la División de Operación del Sistema Eléctrico, para determinar la viabilidad de simplificar los procesos, agilizar y maximizar la utilización de los recursos necesarios. Apéndice del Recurso de *certiorari*, págs. 98–106.

[3] Resolución de 11 de junio de 2002 emitida por el Oficial Examinador, Apéndice del Recurso de *certiorari*, págs. 98–106.

Asuntos de Mecanización de Telecomunicaciones, ubicado en Monacillos.[4]

Por su parte, la A.E.E. alegó que el traslado era necesario, ya que el señor Rivera Fuentes no estaba llevando a cabo las funciones de su puesto, según demostró el estudio organizacional en cuestión. Añadió que la plaza que ocupaba el señor Rivera Fuentes no tenía personal a su cargo, por lo que no realizaba las funciones que establecía su especificación de clase. Arguyó, además, que el señor Rivera Fuentes llevaba un año asignado a un proyecto especial, por lo que se justificaba y era lógico acoger la recomendación formulada en el referido estudio organizacional del área administrativa de la División de Operación del Sistema Eléctrico.[5]

Debido a que el Procedimiento de Querellas para Empleados de Carrera No Unionados[6] provee un mecanismo mediante el cual, contrario a las disposiciones de la L.P.A.U.,[7] designa y delega en un Oficial Examinador la facultad de emitir una decisión final, la querella fue referida al Lcdo. José R. Feijóo.

---

[4] Carta al Sr. Carlos Reyes Berríos, Administrador de la División de Operación del Sistema Eléctrico, de 1 de septiembre de 2000, Apéndice del Recurso de *certiorari*, págs. 132–133. Véase, además, Moción mostrando causa por la cual no se debe expedir auto de revisión, Apéndice del Recurso de *certiorari*, págs. 22–34.

[5] Carta al Sr. Raymond Rivera Fuentes de 14 de septiembre de 2000, Apéndice del Recurso de *certiorari*, págs. 130–131. Véase, además, Solicitud de Revisión presentado por la Autoridad de Energía Eléctrica (A.E.E.), Apéndice del Recurso de *certiorari*, págs. 64–82.

[6] Amparándose en la Ley de Energía Eléctrica de Puerto Rico, 22 L.P.R.A. sec. 191 *et seq.*, y en la Ley de Personal de Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1338, el 21 de julio de 1992 la Junta de Gobierno de la A.E.E. adoptó el Reglamento de Personal para Empleados de Carrera No Unionados. El Art. 15 del mencionado reglamento, *supra*, pág. 47, dispone que "toda queja relacionada con cualquier acción por parte de la Autoridad y las apelaciones de toda determinación que tome la Autoridad Nominadora que afecten a un empleado en cualquier área excluyendo lo relacionado con el procedimiento disciplinario, se canalizarán según lo dispuesto en el Procedimiento de Querellas de Empleados de Carrera No Unionados". El Art. III(2) del referido Procedimiento de Querellas para Empleados de Carrera No Unionados de 5 de mayo de 1994 provee un mecanismo de "Niveles de Ajuste" que deberá utilizar cualquier empleado de carrera de la A.E.E. no unionado que alegue la violación a sus derechos bajo las normas administrativas.

[7] Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.*

Luego de celebrada la vista, el 11 de junio de 2002 el Oficial Examinador emitió la resolución, declarando "con lugar" la querella instada. Decretó la nulidad del traslado y ordenó a la A.E.E. a reinstalar al señor Rivera Fuentes a la posición donde prestaba servicio y a asignarle funciones propias de la clasificación original de su puesto.[8] Específicamente, dispuso sobre el traslado lo siguiente:

> … [N]o tiene como base ninguna necesidad de servicio que lo justifique en adición a ser contrario al Artículo 8.2 del Reglamento de Personal para Empleados No Unionados, particularmente el Artículo 8.2(3) y a las recomendaciones del propio estudio. La querellada debe reinstalar al querellante al Directorado donde prestaba servicio y asignarle las funciones propias de la clasificación que ostentaba previo al traslado, así como cualquier beneficio a que tuviere derecho. Siendo el traslado nulo, la determinación restituye al querellante todos los derechos, beneficios y privilegios que ostentaba previo a dicha acción.[9]

La resolución dictada por el Oficial Examinador fue notificada con copia a las partes. Oportunamente, la A.E.E. presentó una moción de reconsideración, la cual fue denegada mediante una resolución emitida el 23 de julio de 2002.[10] Inconforme con la anterior decisión, la A.E.E. acudió al Tribunal de Apelaciones mediante un recurso de revisión, alegando que el Oficial Examinador erró al determinar que el traslado no tuvo como base la necesidad del servicio. Además, señaló como error el no darle validez al estudio organizacional y concluir que el señor Rivera Fuentes no fue reubicado dentro del Directorado del Sistema Eléctrico.[11]

El 23 de mayo de 2003, el Tribunal de Apelaciones emitió una sentencia en la que desestimó el recurso de revisión

---

[8] Apéndice del Recurso de *certiorari*, págs. 98–106.

[9] Íd., pág. 104.

[10] Resolución emitida por el Oficial Examinador el 23 de julio de 2002, Apéndice del Recurso de *certiorari*, págs. 85–86.

[11] Apéndice del Recurso de *certiorari*, págs. 64–83.

presentado ante su consideración, y archivó en autos copia de su notificación a las partes el 30 de mayo de 2003. Concluyó que la resolución recurrida no había puesto fin al trámite administrativo. Puntualizó que la L.P.A.U. no reconoce al Oficial Examinador como un funcionario o una persona facultada para emitir un dictamen final que vincule a las partes. Determinó que, independientemente del nombre que se le asignó al funcionario —Oficial Examinador— a éste se le facultó para emitir decisiones finales a nombre de la A.E.E.[12] Concluyó, además, que la designación del Oficial Examinador con facultad para emitir decisiones finales, contrario a lo dispuesto por las Secs. 3.3 y 3.14 de la L.P.A.U.,[13] no recayó en un funcionario o empleado público, sino en una persona contratada por una agencia de gobierno que "no ha sido investido de parte de la soberanía del Estado ...".[14]

Insatisfecha, la aquí peticionaria presentó oportunamente una moción de reconsideración,[15] la cual fue denegada mediante una resolución emitida el 27 de marzo de 2003 y archivada en autos copia de su notificación a las partes el 8 de julio de 2003.[16]

Inconforme, la A.E.E. acude ante nos mediante un Recurso de *certiorari*, señalando como error lo siguiente:

> Erró el Honorable Tribunal de Circuito de Apelaciones al desestimar el recurso de revisión interpuesto por la parte aquí peticionaria por el fundamento de que el mencionado recurso resultaba prematuro por no tratarse, en opinión del Honorable Tribunal, de una decisión final de la Autoridad de Energía Eléctrica.

---

[12] Consideró el Tribunal de Apelaciones que el "nombre no hace la cosa", por lo que debía analizarse si el Oficial Examinador podía ser considerado como un Juez Administrativo *de jure*. Véase Apéndice del Recurso de *certiorari*, pág. 20.

[13] 3 L.P.R.A. secs. 2153 y 2164.

[14] Sentencia del Tribunal de Apelaciones de 23 de mayo de 2003, Apéndice del Recurso de *certiorari*, pág. 20.

[15] Apéndice del Recurso de *certiorari*, págs. 4–12.

[16] Íd., pág. 1.

Examinadas las comparecencias de las partes y los autos del presente caso, nos encontramos en posición de expresarnos. Confirmaríamos al foro recurrido. Veamos.

## II

*La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico*

La L.P.A.U. establece un procedimiento uniforme para la revisión judicial de órdenes, resoluciones y providencias dictadas por las agencias administrativas. La Sec. 4.2 de la L.P.A.U.[17] define el ámbito de la revisión judicial de las agencias administrativas. Del mismo modo, establece cuándo procede la revisión y quién tiene acción legitimada para acudir a los tribunales. En lo pertinente, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución *final* de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones [ahora Tribunal de Apelaciones], dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución *final* de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. (Énfasis suplido.) 3 L.P.R.A. sec. 2172.

Conforme se desprende de la anterior disposición, la facultad revisora del Tribunal de Apelaciones solamente puede ejercerse sobre resoluciones y órdenes *finales* de una agencia.[18] El Art. 4.006 de la Ley de la Judicatura del

---

[17] 3 L.P.R.A. sec. 2172.

[18] Véanse: *Padilla Falú v. A.V.P.*, 155 D.P.R. 183 (2001); *J. Exam. Tec. Méd. v. Elías et al.*, 144 D.P.R. 483 (1997).

Estado Libre Asociado de Puerto Rico de 2003,([19]) dispone que el Tribunal de Apelaciones atenderá, mediante un recurso de revisión judicial —que se acogerá como cuestión de derecho— las decisiones, órdenes y resoluciones *finales* de los organismos o las agencias administrativas.([20])

A tales fines, la Sec. 3.14 de la L.P.A.U., *supra*, dispone, en cuanto a una orden o resolución final, lo siguiente:

> Una *orden o resolución final* deberá ser emitida por escrito
> ....
>
> . . . . . . . .
>
> ... La orden o resolución deberá ser firmada por el *jefe de la agencia o cualquier otro funcionario autorizado por ley.*
> La orden o resolución advertirá el derecho de solicitar la reconsideración o revisión de la misma, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos. (Énfasis suplido.) 3 L.P.R.A. sec. 2164.

De este modo, la Asamblea Legislativa limitó la revisión judicial exclusivamente a resoluciones u órdenes finales de las agencias. Al así hacerlo, se aseguró de que la intervención judicial se realizara después de que concluyesen los trámites administrativos y se adjudicasen todas las controversias pendientes ante la agencia. La intención legislativa persigue evitar una intromisión indebida y a destiempo de los tribunales en el trámite administrativo. Pretende, además, que la decisión administrativa refleje la decisión final de la agencia, culminen las controversias presentadas ante ésta y tenga efectos sustanciales sobre las partes.([21])

Con respecto a las figuras que participan en los procesos de adjudicación administrativos, existen dos tipos de funcionarios: los oficiales examinadores y los jueces administrativos. En lo que a ellos concierne, la Sec. 3.3 de la L.P.A.U., *supra*, dispone lo siguiente:

---

([19]) Ley Núm. 201 de 22 de agosto de 2003 (4 L.P.R.A. sec. 22 *et seq.*).

([20]) 4 L.P.R.A. sec. 24y(c).

([21]) *Padilla Falú v. A.V.P.*, supra.

Toda agencia podrá designar oficiales examinadores para presidir los procedimientos de adjudicación que se celebren en ella, los cuales no tendrán que ser necesariamente abogados, particularmente cuando el procedimiento en cuestión es uno informal.

*El jefe de la agencia podrá delegar la autoridad de adjudicar a uno o más funcionarios o empleados de su agencia. A estos funcionarios o empleados se les designará con el título de jueces administrativos.*

En casos cuyos hechos planteen controversias adjudicables bajo la autoridad de más de una agencia, los jefes de las agencias concernidas *podrán delegar en un solo juez administrativo la adjudicación del caso, el cual podrá ser funcionario o empleado de cualesquiera de dichas agencias.* (Énfasis suplido.) 3 L.P.R.A. sec. 2153.

Es norma reiterada de hermenéutica que la letra clara de una ley es la mejor expresión de su espíritu. Cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa.[22] Por ello, al interpretar la ley nos vemos obligados a cumplir con el referido principio de hermenéutica establecido en el Art. 14 de nuestro Código Civil,[23] que dispone: "Cuando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu." [24] El referido principio conduce nuestra interpretación del estatuto en cuestión.

Concluimos que el oficial examinador es aquel funcionario designado para presidir una vista, sin poder de adjudicación. Sus funciones se limitan a presidir el proceso, recibir la evidencia ofrecida por las partes, asegurarse que se cumpla con las normas procesales aplicables y que se conduzca el proceso en forma justa y equitativa. El

---

[22] *Guzmán v. Calderón*, 164 D.P.R. 220 (2005), opinión de conformidad emitida por el Juez Asociado Señor Rivera Pérez; *Santiago v. Supte. Policía de P.R.*, 151 D.P.R. 511 (2000); *Rivera v. E.L.A.*, 140 D.P.R. 538 (1996).

[23] 31 L.P.R.A. sec. 14.

[24] Véanse, además: *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 D.P.R. 483 (1999); *Depto. de la Familia v. Soto*, 147 D.P.R. 618 (1999).

oficial examinador escucha la prueba testifical, recibe la prueba documental y rinde un informe al funcionario que tiene la autoridad para adjudicar —sea éste un juez administrativo o el jefe de la agencia— con sus determinaciones de hechos y recomendaciones.[25]

La referida disposición estatutaria define "juez administrativo" como aquel *funcionario o empleado* de la agencia al cual el jefe de la agencia delega su autoridad de adjudicar. La delegación de dicha autoridad convierte al juez administrativo en un funcionario autorizado en ley para emitir órdenes o resoluciones *finales* a nombre de la agencia.[26]

En síntesis, y como acertadamente puntualizó el Tribunal de Apelaciones: (1) el oficial examinador no cuenta con facultad delegada para adjudicar la controversia en nombre de la agencia administrativa; (2) su recomendación podría ser acogida por el jefe de la agencia, quien emite la decisión y se convierte así en una resolución final de la agencia, y (3) el jefe de la agencia podría delegar la facultad de adjudicar a un juez administrativo que sea un funcionario o empleado de la agencia administrativa.[27]

## III

*Procedimiento de querellas para empleados de carrera no unionados*

Por virtud de la Ley de Energía Eléctrica de Puerto Rico,[28] se creó la A.E.E. como una corporación pública autó-

---

[25] 3 L.P.R.A. sec. 2168.

[26] Al reconocer la facultad del jefe de la agencia de delegar la autoridad para adjudicar a jueces administrativos, "[q]ueda así resuelta la cuestión de que no es necesario que el jefe de la agencia tenga que personalmente resolver y adjudicar la controversia. La cantidad enorme de adjudicaciones que celebran algunas agencias hace imposible que el jefe de la agencia conduzca personalmente las audiencias". D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Bogotá, Ed. Forum, 2001, pág. 186.

[27] Apéndice del Recurso de *certiorari*, pág. 18.

[28] 22 L.P.R.A. sec. 191 *et seq.*

noma del Estado. Dicho estatuto dispone que la A.E.E. será gobernada por una Junta de Gobierno. Ese cuerpo quedó facultado, a su vez, para adoptar reglamentos al amparo de los cuales se regirán los asuntos administrativos y operacionales de la agencia. El referido estatuto dispuso que le corresponderá a la Junta efectuar "[n]ombramientos, separaciones, ascensos, traslados, ceses, reposiciones, suspensiones, licencias, y cambios de categoría, remuneración o título de los funcionarios y empleados de la Autoridad, [según] dispongan las normas y reglamentos que prescriba la Junta ...".[29]

Amparándose en el referido estatuto y en la Ley de Personal del Servicio Público de Puerto Rico,[30] el 21 de julio de 1992 la Junta de Gobierno de la A.E.E. emitió la Resolución 2386, mediante la cual adoptó el Reglamento de Personal para Empleados de Carrera No Unionados. El Art. 15 del referido cuerpo reglamentario dispone lo siguiente:

> Toda queja relacionada con cualquier acción por parte de la Autoridad y las apelaciones de toda determinación que tome la Autoridad Nominadora que afecten a un empleado en cualquier área excluyendo lo relacionado con el procedimiento disciplinario, se canalizarán según lo dispuesto en el Procedimiento de Querellas Para Empleados de Carrera No Unionados. (Énfasis suplido.) Reglamento de Personal para Empleados de Carrera No Unionados, *supra*, pág. 47.

Un examen del Procedimiento de Querellas para Empleados de Carrera No Unionados revela que éste provee un mecanismo en el que, contrario a las disposiciones de la L.P.A.U., se designa y delega a un oficial examinador la facultad de emitir una decisión final.

> El Oficial Examinador, a base del récord y de la evidencia presentada, emitirá su decisión conforme a derecho dentro de los treinta (30) días laborables luego de sometido el caso. Las decisiones se emitirán por escrito e incluirán separadamente

---

[29] 22 L.P.R.A. sec. 197(a).

[30] 3 L.P.R.A. sec. 1301 *et seq.*

determinaciones de hechos y de derecho. El Oficial Examinador notificará por correo toda Decisión a las partes y a sus respectivos abogados haciendo constar en autos la fecha de notificación y el nombre y dirección de cada persona notificada. Además, se advertirá a la parte afectada la disponibilidad del recurso de reconsideración señalando que es requisito jurisdiccional. Art. VII del Procedimiento de Querellas para Empleados de Carrera No Unionados, *supra*, pág. 9.

Del mismo modo, el Art. IX del Procedimiento de Querellas para Empleados de Carrera No Unionados dispone que las decisiones del oficial examinador podrán ser revisadas ante el Tribunal Superior, hoy Tribunal de Apelaciones.

En virtud de la referida disposición reglamentaria, la A.E.E. ha designado ex Jueces Superiores, ex Jueces de Apelaciones y abogados con experiencia en el derecho laboral y en el procedimiento de adjudicación, como oficiales examinadores con facultad para emitir decisiones finales.[31] Éstos no son funcionarios ni empleados de la A.E.E., sino que son personas privadas contratadas para escuchar la prueba y emitir una decisión final.

El Art. II del referido Procedimiento de Querellas para Empleados de Carrera No Unionados exige que el oficial examinador no sea empleado de la agencia. Al definir la figura del oficial examinador, dispone que será un "[a]bogado que *no sea empleado* de la Autoridad designado para oír la prueba presentada por las partes y *emitir una decisión* una vez sometido el caso. Se nombra de una lista de oficiales examinadores con experiencia preferiblemente en el campo laboral". (Énfasis suplido.)[32]

Como señalamos anteriormente, de las referidas disposiciones reglamentarias surge que el Procedimiento de Querellas para Empleados de Carrera No Unionados, contrario a las disposiciones de la L.P.A.U., provee un meca-

---

[31] Alegato de la parte peticionaria, págs. 10–12.

[32] Procedimiento de Querellas Para Empleados de Carrera No Unionados, Apéndice del Recurso de *certiorari*, pág. 566.

nismo mediante el cual se designa y se delega a un *oficial examinador* la facultad de emitir una decisión *final*. Exige, además, en contravención a la ley, que no sea empleado o funcionario de la agencia.

## IV

Es norma conocida en nuestro ordenamiento jurídico que un reglamento promulgado por una agencia para administrar las funciones dispuestas por ley, puede complementarla pero nunca estar en conflicto con ella.[33] Todo reglamento aprobado por una agencia administrativa cubierta por la L.P.A.U. tiene que ajustarse a lo dispuesto por esa ley, por lo que un reglamento o una actuación administrativa claramente en conflicto o en contra de la ley es nula.[34]

En el caso de autos, la resolución cuya revisión se solicita está suscrita por el Lcdo. José R. Feijóo, oficial examinador designado y facultado por la A.E.E. para emitir decisiones finales a nombre de la agencia. De la Sec. 3.3 de la L.P.A.U., *supra*, surge claramente y libre de toda ambigüedad, que el oficial examinador no cuenta con la facultad delegada por ese estatuto para adjudicar la controversia en nombre de una agencia administrativa. Por ello, éste no puede emitir una resolución u orden final que obligue a las partes. El nombre no hace la cosa; lo cierto es que se le facultó al Lcdo. José R. Feijóo para emitir decisiones finales a nombre de la A.E.E. Ahora bien, a pesar de que la designación del licenciado Feijóo se realizó conforme al Procedimiento de Querellas para Empleados de Carrera No Unionados, es evidente que no cualifica *de jure* como un

---

[33] *Pérez v. Com. Rel. Trab. Serv. Púb.*, 158 D.P.R. 180 (2002); *Asoc. Fcias. Com. v. Depto. de Salud*, 156 D.P.R. 105 (2002); *P.S.P. v. Comisión Estatal de Elecciones*, 110 D.P.R. 400, 409 (1980).

[34] *Martínez v. Depto. de Educación*, 148 D.P.R. 648 (1999); *P.S.P. v. Comisión Estatal de Elecciones*, supra; *Infante v. Tribl. Examinador Médicos*, 84 D.P.R. 308 (1961).

juez administrativo, ya que la facultad de adjudicar delegada por la A.E.E. no recayó en un funcionario o empleado público, según lo requiere la Sec. 3.3 de la L.P.A.U., *supra*. La referida disposición estatutaria faculta al jefe de la agencia a delegar la autoridad de adjudicar a *uno o más funcionarios o empleados de su agencia.*

En el caso ante nos, el Lcdo. José R. Feijóo no es funcionario ni empleado de la A.E.E., sino una persona del sector privado contratada para escuchar la prueba y emitir una decisión final. En total contravención al lenguaje inequívoco de la L.P.A.U., la A.E.E. ha designado a personas como oficiales examinadores con facultad para emitir decisiones *finales*, sin ser empleados o funcionarios de la agencia.[35]

Concluimos, ante el lenguaje claro e inequívoco de la L.P.A.U., que la infraestructura jurídica estatutaria no autoriza al jefe de una agencia a delegar su autoridad para adjudicar una controversia de manera final a un oficial examinador. Tampoco permite que delegue tal autoridad a un juez administrativo que no sea un empleado o funcionario de la agencia. La delegación de autoridad conferida en este caso al Lcdo. José R. Feijóo es nula.

Arguye la A.E.E. que la disposición reglamentaria del *Procedimiento de Querellas para Empleados de Carrera No Unionados*, que delega en un oficial examinador la autoridad de emitir una decisión final, provee unas garantías adicionales a las disposiciones de la L.P.A.U., en cuanto "le otorga la facultad de emitir resoluciones u órdenes finales a personas externas que gozan de gran reputación en el campo jurídico sin perjuicio del derecho de [las partes de solicitar] reconsideración o revisión judicial".[36] Aduce la A.E.E., aquí peticionaria, que no ofrece una garantía mayor a sus empleados el hecho de que el adjudicador de las querellas presentadas en su contra sea uno de sus funcio-

---

[35] Alegato de la parte peticionaria, págs. 11–12.

[36] Íd., pág. 11.

narios o empleados.([37]) Tales argumentos son improcedentes.

Dentro de nuestro expediente surge que el reclamo del querellante es dirigido contra la A.E.E. como empleado. Dicho reclamo tiene, bajo la L.P.A.U., que ser resuelto por un juez administrativo que sea empleado o funcionario de la A.E.E. Por imperativo constitucional del debido proceso de ley, la A.E.E. y su Director Ejecutivo no pueden ser parte y, a la vez, ser el organismo formal de naturaleza cuasi judicial donde los empleados impugnan y se querellan de sus propias actuaciones. Partiendo de la premisa que la Sec. 3.3 de la L.P.A.U., *supra,* se presume válida desde una perspectiva constitucional, consideramos a la A.E.E. y al juez administrativo que considera el referido estatuto, entes separados e independientes a los efectos de sus funciones particulares.([38])

El equivalente a lo que la A.E.E. pretende es que esta Curia enmiende una ley cuyo texto es claro. Lo anterior es contrario al principio de separación de poderes que permea nuestro sistema republicano de gobierno, bajo el cual la función de la Rama Judicial es interpretar la ley, no formular política pública ni, mucho menos, dirigir tal ejercicio.([39]) Esa facultad le corresponde a las Ramas Legislativa y Ejecutiva. No nos corresponde, por lo tanto, juzgar la bondad o sabiduría del legislador al aprobar una legislación ni debemos frustrar los propósitos de un estatuto cuando la letra es clara y expresa, y sin ambigüedad su intención.([40]) Somos del criterio que cuando el lenguaje de la ley es claro e inequívoco, nuestra responsabilidad es respetar la volun-

---

([37]) Íd.

([38]) *Marcano Rivera v. Departamento Estado,* 163 D.P.R. 778 (2005); *Rafael Rosario & Assoc. v. Depto. Familia,* 157 D.P.R. 306 (2002).

([39]) Este principio está contenido en la Sec. 2 del Art. I de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, pág. 256. Véase *Corraliza v. Bco. Des. Eco.,* 153 D.P.R. 161 (2001).

([40]) *Famania v. Corp. Azucarera de P.R.,* 113 D.P.R. 654 (1982).

tad legislativa, independientemente de nuestro criterio personal.[41]

Resolvemos, pues, que la delegación conferida por la A.E.E. al Lcdo. José R. Feijóo para adjudicar una controversia de manera final es nula por recaer en una persona que no es funcionario ni empleado de la A.E.E., conforme lo requieren *expresamente* las Secs. 3.3 y 3.14 de la L.P.A.U., *supra*. Del mismo modo, consideramos procedente decretar nulas las disposiciones del Procedimiento de Querellas para Empleados de Carrera No Unionados que facultan a personas privadas contratadas por la A.E.E. para escuchar y recibir la evidencia de las partes y emitir decisiones finales, en contravención con lo dispuesto en las Secs. 3.3 y 3.14 de la L.P.A.U., *supra*, en específico, el inciso (3) del Art. III y los Arts. VII, VIII y IX del referido procedimiento de querellas.

## V

Por los fundamentos antes expuestos, concluimos que actuó correctamente el foro intermedio apelativo al desestimar el recurso de revisión presentado por la A.E.E. por prematuro al no haber concluido el trámite administrativo en cuestión. Confirmaríamos la sentencia recurrida emitida por el entonces Tribunal de Circuito de Apelaciones. Por no ser ese el curso de acción de la mayoría, DISENTIMOS.

---

[41] *Delgado, Ex parte*, 165 D.P.R. 170 (2005); *Pueblo v. Zayas Rodríguez*, 147 D.P.R. 530 (1999).