ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| ANA ROSA PADRÓ VIZCARRONDO<br>Recurrente<br><br>v.<br><br>MUNDO MATTRESS PUERTO RICO INC.<br>Recurrido | KLRA202300127 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Querella número:<br>SAN-2022-0012381<br><br>Sobre: Ley 5 |
|---|---|---|

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa.

Ortiz Flores, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de abril de 2023.

Comparece la señora Ana Rosa Padró Vizcarrondo (Sra. Padró; recurrente) mediante un recurso de revisión administrativa y nos solicita que revoquemos la *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACO; agencia recurrida) el 23 de febrero y notificada el 24 de febrero de 2023. En el mencionado dictamen, DACO declaró "No Ha Lugar" la querella presentada por la recurrente.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

**I**

La Sra. Padró presentó, el 7 de octubre de 2022, una *Querella*[1] contra Mundo Mattress Puerto Rico, Inc. (Mundo Mattress; recurrida). En esta, alegó que el 11 de mayo de 2021, acompañada de su esposo Wilfredo Soto Rivera (fallecido el 28 de diciembre de 2021), visitó la "Tienda de Mundo Mattress" (Tienda Mundo Mattress) ubicada en el número 1301 de la Avenida Piñero en Rio Piedras para comprar una cama ajustable y los correspondientes "mattress". Añade que fue atendida por el señor Laureano Dávila (Sr. Laureano) quien les informó que, en alternativa a una compra en efectivo, tenían la opción de hacer un

---

[1] *Resolución* emitida el 23 de febrero de 2023 por DACO, incluida como anejo del recurso, pág. 1.

financiamiento de la compra con la Cooperativa de Ahorro y Crédito Familiar Progresista. En esa misma fecha, la recurrente hizo un depósito de $100.00 en efectivo y, al día siguiente, obtuvo la aprobación del financiamiento.

El 14 de mayo de 2021, la Sra. Padró le entregó el cheque correspondiente a Mundo Mattress y varios días después le entregaron la cama y los "mattress". El 13 de septiembre de 2022, más de un año después de la entrega de los bienes adquiridos, la Sra. Padró visitó la Tienda Mundo Mattress y reclamó que había notado que el mattress estaba hundido. El Sr. Laureano le dijo, "eso lo vamos a resolver rapidito" y le dio el número del fabricante Simmons. La recurrente llamó a Simmons y una persona de apellido James le informó que el mattress no era de ellos.

Luego, expone en el recurso que visitó el almacén de Mundo Mattress ubicado en la Avenida San Marco en la zona industrial Extensión El Comandante en Carolina y le dieron el número de teléfono del Sr. Leonardo Avilés (Sr. Avilés). Añade que, posteriormente, se enteró que el fabricante del mattress era Sealy, llamó al Sr, Avilés y este le solicitó a ella que le enviara fotos del mattress. Recibida la foto, el Sr. Avilés le informó que un representante de Sealy iba a visitar su casa para inspeccionar el mattress.

La inspección del mattress se hizo el 24 de septiembre de 2022 y el Sr. Avilés le envió una carta por correo electrónico con fecha del 28 de septiembre de 2022 en la que informó que no procedía el cambio de mattress porque no tenía las etiquetas de la garantía. La recurrente expone en el recurso que removió las etiquetas, luego de conocer que los mattress eran de Sealy, y que las "tiene con ella", por lo que llamó al Sr. Avilés y le informó sobre ello; no obstante, también se le indicó que el mattress estaba hinchado.

El 7 de octubre de 2022, ante la denegatoria de honrar la garantía por 10 años que se reclama que está indicada en la factura, presentó la querella ante DACO.

La agencia recurrida emitió, el 18 de octubre de 2022, un documento titulado *Notificación de Querella*,[2] enviado a la Sra. Padró y a Mundo Mattress, en el que se incluyó copia a las partes de la querella, y se les informó lo siguiente:

> Oportunamente se le notificará la fecha para vista administrativa; a la que podrá comparecer asistido de abogado, intérprete, o transcriptor de record. Además, deberán comparecer todas las personas citadas y se les apercibe que en caso de incomparecencia sin justa causa se le impondrá sanciones.

Además, en cuanto a la contestación de la querella, la parte recurrida fue apercibida como sigue:

> El término que usted tiene para contestar la querella o enmienda es de veinte (20) días calendarios, a partir de la notificación de la querella. De no recibirse una contestación a la querella dentro de dicho término se le anotará la rebeldía. La enmienda a la querella inicia nuevamente los términos para resolver la querella en el término establecido por la Ley Núm. 38 de 30 de junio de 2017, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.

Surge del expediente que, el 23 de noviembre de 2022, se notificó a las partes una orden de señalamiento de vista administrativa para el 7 de febrero de 2023. Llamado el caso por DACO para la vista administrativa señalada, el 7 de febrero de 2023, la recurrente compareció por derecho propio; la recurrida no compareció a la misma, por lo que se le anotó la rebeldía. Así las cosas, el 23 de febrero de 2023, DACO emitió una *Resolución*[3] en la que formuló las siguientes determinaciones de hecho:

1. La parte [q]uerellante, compró dos mattress y una cama en Mundo Mattress Inc. para el 11 de mayo de 2021.

2. El mattress y la cama tuvieron un costo de $4,620.00 más $514.05 en impuestos.

3. A la cama se le otorgó una garantía de veinte años con el manufacturero.

---

[2] *Notificación de querella* emitida el 23 de noviembre de 2022 por DACO.
[3] *Resolución* emitida el 23 de febrero de 2023 por DACO, incluida como anejo del recurso, págs. 1-4.

4. Al mattress se le otorgó una garantía de 10 años con Sea[l]y Mattress of PR.

5. Alega la querellante que para el mes de septiembre de 2022 encontró que uno de los dos mattress perdió firmeza y se hundió por lo que fue a la tienda quienes hicieron la reclamación al manufacturero.

6. La casa manufacturera Sea[l]y Mattress of PR, envió el 24 de septiembre de 2022, un inspector a ver el mattress. Posteriormente le enviaron por correo una denegatoria de garantía pues el mattress supuestamente no tenía los sellos de la garantía y tenía una mancha.

7. La parte querellante acudió a DACO y presentó la querella de epígrafe el 7 de octubre de 2022 donde solicitó la resolución de contrato y devolución de las prestaciones pues no le honraron la garantía.

8. La parte querellante no incluyó a Sea[l]y Mattress of PR, Inc. en su querella.

9. La parte querellante presentó los sellos de garantía de los mattress.[4]

En esencia, conforme a las determinaciones de hechos antes citadas, las conclusiones de derecho de la agencia recurrida fueron las siguientes:

[…] El DACO "ha sido creado con el propósito principal de vindicar, proteger e implementar los derechos de los consumidores, tal y como están contenidos en todas las leyes vigentes. Las adjudicaciones de las querellas ante nuestra consideración concederán los remedios conforme a derecho.

En este caso, la parte [q]uerellante indicó en su testimonio que hizo una solicitud de servicio en garantía pero que le fue denegada por el fabricante pues este no encontró los sellos del producto.

En el presente caso las partes otorgaron un contrato de compraventa de bien mueble de los tipificados en el Artículo 1334 del Código Civil de Puerto Rico (31 LPRA sec. 3741), mediante el cual la parte querellante adquirió de Mundo Mattress Puerto Rico Inc. un juego de cama a cambio de un precio cierto.

En los contratos de compraventa el vendedor esta obligado a la entrega y saneamiento de la cosa vendida. (Véase artículos 1363 y siguientes del citado Código).

El Artículo 1373 del Código civil, [*supra*], establece los requisitos para que proceda la acción de saneamiento por vicios ocultos. Los defectos deben ser:

---

[4] *Id.*, págs. 2-3.

a. preexistentes a la venta [e]n por lo menos germen o principio [*Boyd v. Tribunal*],101 DPR 651(1973)[;]
b. desconocidos por el comprador;
c. de tal gravedad o importancia que hagan la cosa impropia para el uso a que se le destina, o que disminuyan de tal modo ese uso, que de haberlo conocido el comprador no la habría adquirido o habría pagado u precio menor [;]
d. que la acción se ejercite dentro del plazo legal [,] que es de seis meses a partir de la última gestión de inteligencia entre las partes[*Ferrer v. General Motors*], 100 DPR 246 (1971).

Específicamente, DACO razonó lo siguiente:

El paso inicial en las acciones de saneamiento por vicios ocultos consiste en determinar si los defectos que adolece la cosa objeto del contrato que se pretende rescindir constituyen vicios redhibitorios. Estos has sido definidos como aquellos defectos que exceden las imperfecciones menores que cabe esperar normalmente en un producto determinado, no siendo necesario que dichos defectos imposibiliten el uso de la cosa vendida, basta que mermen notablemente su valor. (Citas omitidas.)

El propósito de la venta para el comprador es adquirir la cosa para servirse de ella y dicho propósito dejaría de realizarse si, una vez hecha la entrega, el comprador se ve privado de la cosa o imposibilitado de aplicarla a los usos que le sean propios. […]

Conforme a sus conclusiones de derecho, antes citadas, DACO determinó que "lo único que la parte promovente tiene que demostrar es que el mueble presenta un defecto [y] que la vendedora tuvo la oportunidad de corregir los defectos, pero no los corrigió, o no pudo corregirlos." (Subrayado en original.) Finalmente, la agencia recurrida emitió su dictamen, como sigue:

Se declara No Ha Lugar la querella de epígrafe y [s]e desestima la misma en cuanto a **Mundo Mattress, Inc[.] pues la reclamación se hizo fuera del período de saneamiento.**

Inconforme, la Sra. Padró presentó el 16 de marzo de 2023 un recurso de revisión judicial sobre decisión administrativa. La recurrente no presentó señalamientos de errores sobre el dictamen administrativo recurrido, y solo expuso lo siguiente:

Acudo a este Honorable Tribunal de Apelaciones, para la acción o acciones que correspondan.

Tengo varias condiciones crónicas de salud, como[:] alta presión, diabetes y asma severa y tengo que dormir con una

máquina para la apnea del sueño, por lo que tengo que estar cómoda, para dormir.

Habiendo transcurrido el término reglamentario, la parte recurrida no compareció.

**II**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 LPRA 9601, *et seq.* (LPAU) establece los estándares de revisión judicial de órdenes, resoluciones y providencias dictadas por las agencias administrativas. En lo pertinente, la Sección 4.2 de la LPAU, 3 LPRA sec. 9672, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo.

Así, es requisito que la parte haya agotado todos los remedios disponibles en la agencia u organismo administrativo correspondiente y que la base para la revisión judicial sea la orden o resolución final de la agencia.  Por su parte, la sección 1.3 de la LPAU, 3 LPRA sec. 9603(g)*,* define orden o resolución final como sigue:

> [C]ualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas excluyendo órdenes ejecutivas emitidas por el Gobernador.

Lo que se exige es que la disposición sea final a los efectos de que la misma refleje la posición de la agencia, ponga fin a las controversias presentadas ante esta y tenga efectos sustanciales sobre las partes. *A.E.E. v. Rivera*, 167 DPR 201 (2006); *Padilla Falú v. A.V.P.*, 155 DPR

183, 189-190 (2001). Cónsono con lo anterior, el artículo 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley 201-2003, 4 LPRA sec. 24, *et seq.*, dispone que el Tribunal de Apelaciones atenderá mediante el recurso de revisión judicial las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Es decir, cualquier orden o resolución emitida por la última autoridad adjudicativa o decisoria de la agencia administrativa, la cual pone fin al caso ante la agencia, pues resuelve todas las controversias y no deja asuntos pendientes a decidirse en el futuro. *AAA v. UIA*, 200 DPR 903, 910-911(2018), *Bird Const. Corp. v. A.E.E.,* 152 DPR 928, 935-936 (2000); *J. Exam. Tec. Méd. v. Elías et al.,* 144 DPR 483, 490 (1997).

El Tribunal Supremo de Puerto Rico ha resuelto que los dos requisitos para que las órdenes emitidas por las agencias administrativas puedan ser revisada por este Tribunal son los siguientes: 1) que la resolución sea final y no interlocutoria y 2) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia. *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006) que cita a *Procuradora Paciente v. MCS,* 163 DPR 21, 34-35 (2004); *J. Exam. Tec. Méd. v. Elías et al., supra*, a la pág. 491.

La revisión judicial de las decisiones administrativas fue un procedimiento que se ideó como parte de un trámite apelativo dirigido a alcanzar el principio constitucional de mayor acceso a los tribunales. J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones SITUM, Inc., 2012, pág. 281. El entendido es que "a través de la revisión judicial se controla la acción o inacción, de las agencias administrativas". *Id.* Su propósito es que las agencias demuestren su razonamiento y los hechos en lo que basa sus decisiones, además de que demuestren que las mismas están dentro del ámbito del poder y la autoridad delegada en estas. *Id.* en las págs. 281-282. Lo Tribunales tenemos el deber de fiscalizar con rigurosidad las decisiones administrativas para asegurarnos

de que las agencias cumplan con sus funciones y que no se pierda la fe en las instituciones de gobierno. *Id.* en la pág. 282.

La norma en nuestro ordenamiento jurídico es que la revisión judicial es el remedio exclusivo disponible contra una decisión de una agencia administrativa.[5] La revisión judicial de decisiones administrativas abarca esencialmente tres áreas: (1) la concesión del remedio apropiado, (2) la revisión de las determinaciones de hechos de acuerdo al criterio de evidencia sustancial y (3) la revisión de las conclusiones de derecho. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, FORUM, 2013, pág. 688. Ahora bien, la revisión por parte de los tribunales en cuanto a las determinaciones de las agencias es limitada. La norma reiterada por el Tribunal Supremo de Puerto Rico es que las decisiones de las agencias administrativas **merecen deferencia judicial** por la "vasta experiencia y conocimiento especializado sobre los asuntos que por ley se les ha delegado". J*P, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177,186 (2009). Los tribunales debemos respetarlas "**a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente**". (Énfasis nuestro). *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009).

Por lo tanto, "los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero v. Toyota*, 163 DPR 716, 727-728 (2005). En nuestra función como tribunal revisor debemos limitar nuestra intervención a determinar si la actuación de la agencia fue una caprichosa, arbitraria, ilegal o que constituye un abuso de discreción por ser irrazonable. *Murphy Bernabé v. Tribunal Superior*, 103 DPR 692,

---

[5] Véase J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones SITUM, Inc., 2012, pág. 288 donde se discute el caso *ELA v. Hosta Modesti*,169 DPR 673 (2006) que resuelve que no procedía la expedición de un *mandamus* pues la revisión judicial es el remedio apropiado en ley para la impugnación de una decisión administrativa.

699 (1975). Esto responde a que "**los procedimientos ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección**". (Énfasis nuestro). *A.D.C.V.P v. Tribunal Superior*, 101 DPR 875, 880 (1974).

Por otro lado, en lo que respecta a la revisión de conclusiones de derecho, la norma es que son revisables en todos sus aspectos por este Tribunal. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 470 (2009). No obstante, debemos señalar que es norma reiterada que "se le debe dar deferencia a la aplicación del Derecho que realiza una agencia administrativa sobre la interpretación de las leyes y los reglamentos que estas administran". *Olmo Nolasco v. Del Valle Torruella*, *supra*, pág. 470. Claro está, es importante tener presente que "los tribunales no están llamados a imprimir un sello de corrección, so pretexto de la deferencia, para avalar situaciones en que la interpretación efectuada resulta contraria a derecho". Echevarría Vargas, *op. cit.*, en la pág. 301. Asimismo, tampoco será aplicable el criterio de deferencia cuando "la interpretación de la agencia produce resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública". *Asociación de Farmacias v. Caribe Specialty*, 179 DPR 923,942 (2010).

**III**

En su escrito de revisión judicial la Sra. Padró solicita que se le honre la garantía del mattress que compró en Mundo Mattress, según lo reclamó en la querella. No expone señalamientos de error contra DACO. Además, la recurrente presentó su querella en DACO habiendo transcurrido en exceso el término de seis meses para saneamiento.

Las decisiones de las agencias administrativas merecen nuestra deferencia por su conocimiento especializado al resolver los asuntos que se les encomendó atender. La parte que recurre de una determinación de una agencia administrativa ante el Tribunal de Apelaciones está obligada a rebatir la presunción de corrección que cobija las decisiones administrativas, por no estar apoyada en evidencia sustancial y debe

demostrar que con su determinación la agencia incurrió en prejuicio, parcialidad o abuso de su discreción. Como tribunal revisor nos corresponde determinar si la actuación de la agencia fue una caprichosa, arbitraria, ilegal o si constituye un abuso de discreción por irrazonable.

Luego de examinar detenidamente los planteamientos y argumentos expuestos en el recurso presentado y los documentos incluidos resolvemos que la resolución recurrida merece nuestra deferencia, por lo que procede confirmarla.

**IV**

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida**.**

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones