ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| **DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES** Recurrido <br><br> v. <br><br> **JOSÉ DEL C. VARGAS CORTÉS, IRMA LLAVONA RIVERA y la sociedad de bienes gananciales compuesta por ambos** Recurrente | KLRA202400547 | **Revisión Administrativa** procedente del Departamento de Recursos Naturales y Ambientales <br><br> Núm. **23-200-ZMT** <br><br> Sobre: Infracción al Artículo 5(h) de la Ley 23 del 20 de junio de 1972, según enmendada, al Artículo 1.4 (Ch), 4.1, 4.2 y 4.3 del Reglamento 4860 de 29 de diciembre de 1992. Ley 241 del 15 de agosto de 1999, según enmendada y su Reglamento 6765 |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Comparece ante nos, el señor José del C. Vargas Cortés, la señora Irma Llavona Rivera y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante, matrimonio Vargas-Llavona o parte recurrente), y solicitan que revisemos la *Resolución Interlocutoria* emitida el 24 de julio de 2024, por la entonces Secretaria del Departamento de Recursos Naturales y Ambientales (en adelante, DRNA), Lcda. Anaís Rodríguez Vega. Mediante la misma, entre otras cosas, la Secretaria declaró *No Ha Lugar* la moción de descalificación/recusación presentada contra la Oficial Examinadora, Lcda. María V. Ortega Ramírez, y *No Ha Lugar* la inhibición *motu proprio* de la Oficial Examinadora Ortega Ramírez.

Consecuentemente, le instruyó a la letrada continuar atendiendo los procesos del caso de referencia.

Por entender que el asunto interlocutorio traído a nuestra atención amerita preterir el cauce administrativo, y, por ende, el dictamen aludido es susceptible de revisión judicial, se revoca el pronunciamiento recurrido.

## I.

Según surge del expediente, el caso de autos se originó el 1 de agosto de 2023, cuando el DRNA instó una *Querella* en contra del matrimonio Vargas-Llavona sobre violación a la Ley 23 de 20 de junio de 1972, según enmendada, conocida como *Ley Orgánica del Departamento de Recursos Naturales y Ambientales*; el Reglamento Núm. 4860, según enmendado; *Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, los Terrenos Sumergidos bajo estas y la Zona Marítimo Terrestre de Puerto Rico,* la Ley Núm. 133 del 1 de julio de 1975 conocida como *Ley de Bosques de Puerto Rico;* y Ley Núm. 241 de 15 de Agosto de 1999, según enmendada, conocida como *Nueva Ley de Vida Silvestre de Puerto Rico* (Ley Núm. 241-1999). En esencia, la agencia alegó que el Cuerpo de Vigilantes le informó que en una propiedad inmueble del matrimonio Vargas-Llavona, ubicada en la calle 7 de la comunidad costera La Parguera del municipio de Lajas, se llevaron a cabo trabajos de depósito de relleno, corte de mangle y construcción de casa, sin los debidos permisos. El DRNA añadió que las acciones o actividades antes mencionadas se realizaron en menosprecio a las leyes y reglamentos que administra. Por tanto, solicitó a la Secretaria que impusiera al matrimonio Vargas-Llavona múltiples multas administrativas; la restauración del área impactada por el corte de árboles de mangle; la remoción total de la estructura y el restablecimiento del área a su estado natural a satisfacción del DRNA.

El matrimonio Vargas-Llavona contestó la querella oportunamente y negó las alegaciones hechas en su contra. Entre varias defensas afirmativas, esbozó que la propiedad en cuestión existía previo a la promulgación de todas las leyes y reglamentos citados en la querella, lo cual ameritaba un trato particular y cónsono con la política pública enunciada por el Gobierno de Puerto Rico.

Luego de varios incidentes procesales no necesarios de pormenorizar, el matrimonio Vargas-Llavona solicitó la descalificación/recusación de la Oficial Examinadora que atendía el caso, la Lcda. María V. Ortega Ramírez, así como la inhibición de la entonces Secretaria del DRNA, Lcda. Anaís Rodríguez Vega. Ello, bajo el fundamento de que durante el trámite de los procedimientos ambas funcionarias incurrieron en una conducta que afectaba la integridad del proceso adjudicativo que seguía la agencia. El matrimonio Vargas-Llavona especificó que el daño que ocasionó tal conducta a la integridad de los procedimientos, así como a éste y su representación legal, era irreparable y lamentable. Añadió que las expresiones de la pasada Secretaria del DRNA durante los procedimientos demostraron prejuicio y un ánimo prevenido en su contra. Precisó que la Oficial Examinadora incurrió en un patrón de conducta que infringía crasamente su derecho constitucional a un debido proceso de ley.

A raíz de lo anterior, y, en lo pertinente, el 24 de junio de 2024, la Lcda. Ortega Ramírez emitió su *Informe de la Oficial Examinadora.* En este explicó en detalle las razones por las cuales entendía que el abogado del matrimonio Vargas-Llavona "faltaba a la verdad y tergiversaba los hechos y escritos que obran en el expediente del caso a su conveniencia".[1] Además, rebatió las alegaciones formadas

---

[1] Apéndice del recurso, pág. 4.

en su contra por la representación legal del matrimonio Vargas-Llavona. Esencialmente, negó que tuviera un ánimo prevenido o parcialidad y esgrimió que "decide [los casos] según su visión del derecho".[2] Adujo que del expediente administrativo no surgía ningún documento expedido por ésta en el cual hubiera realizado alguna determinación en los méritos de las alegaciones de la querella que incidieran sobre la solución final del caso. En esa dirección, puntualizó que todo lo que ha resuelto se circunscribía a asuntos procesales. Destacó que ninguna de sus actuaciones fue influida por factores extrínsecos. Así las cosas, recomendó a la Secretaria denegar la solicitud de descalificación y recusación presentada por el matrimonio Vargas-Llavona por ser injusta, irrazonable e improcedente en derecho. Sin embargo, utilizando la discreción que ostenta, solicitó a la Secretaria del DRNA que se le autorizara inhibirse de la consideración del caso de referencia, para evitar dilaciones en el procedimiento administrativo.

Consecuentemente, el 24 de julio de 2024, la entonces Secretaria del DRNA dictó la *Resolución Interlocutoria* objeto del recurso de revisión judicial bajo nuestra consideración. En esta declaró, entre otras cosas, *No Ha Lugar* la moción de descalificación/recusación incoada por el matrimonio Vargas-Llavona; *No Ha Lugar* la solicitud de inhibición de la Secretaria del DRNA; y *No Ha Lugar* la inhibición solicitada por la Oficial Examinadora. A esta última se le instruyó continuar atendiendo el caso.

En desacuerdo, el matrimonio Vargas-Llavona incoó una *Solicitud de Reconsideración*, la cual, mediante *Informe de la Oficial Examinadora* fechado 3 de septiembre de 2024, la Lcda. Ortega Ramírez recomendó a la Secretaria del DRNA declarar *No Ha Lugar*.

---

[2] Apéndice del recurso, pág. 31.

Así, el 5 de septiembre de 2024, el Secretario Interino del DRNA[3] emitió una *Resolución Interlocutoria* por medio de la cual acogió el *Informe de la Oficial Examinadora* y denegó la solicitud de reconsideración.

Aun inconforme, el matrimonio Vargas-Llavona acude ante este Foro y alega que el DRNA cometió los siguientes errores:

> Primer Error: Erró el DRNA, por conducto de su Secretaria, Lcda. Anaís Rodríguez Vega, al declarar de forma *ultra vires* No Ha Lugar la solicitud de inhibición presentada por la parte [recurrente] en su contra. Esto, sin emitir fundamento alguno para su determinación y cuando sus expresiones públicas denotan prejuicio, parcialidad y ánimo prevenido insubsanable en contra de la parte [recurrente].

> Segundo Error: Erró el DRNA [al] declarar No Ha Lugar la solicitud de descalificación/recusación de la Oficial Examinadora del caso, Lcda. María V. Ortega Ramírez. Esto, cuando surge del expediente administrativo que ésta ha asumido posición de parte adversa y sus escritos y determinaciones denotan prejuicio, parcialidad y ánimo prevenido insubsanable en contra de la parte [recurrente].

> Tercer Error: Erró el DRNA al imponer de forma *ultra vires* a la Oficial Examinadora la obligación de continuar los procedimientos tras ésta haber presentado un informe en el cual solicita se le autorice su inhibición.

El 27 de diciembre de 2024, el DRNA, representado por la Oficina del Procurador General de Puerto Rico, solicitó la desestimación del recurso de autos. Coligió que, debido a la renuncia de la Lcda. Rodríguez Vega efectiva el 31 de diciembre de 2024, el recurso se tornaría académico. Añadió que era prerrogativa del próximo Secretario o Secretaria inhibirse de los procedimientos y atender la solicitud de descalificación de la Oficial Examinadora, la cual solicitó autorización para inhibirse del caso, pero su petición fue revocada. Precisó que, al momento de que este Foro evaluara los méritos y adjudicara el presente caso, los señalamientos de error

---

[3] Conforme la Regla 201 de Evidencia, 32 LPRA Ap. IV, R. 201, se toma conocimiento judicial de la designación del señor Waldemar Quiles Pérez como Secretario del DRNA.

consignados por el matrimonio Vargas-Llavona no constituirían una controversia real que pudiera ser susceptible de adjudicación.

El matrimonio Vargas-Llavona replicó a dicho petitorio. En síntesis, razonó que el primer señalamiento de error se había tornado académico, más no así el segundo ni el tercero. Por tanto, requirió a este Foro que denegara la solicitud de desestimación presentada por el DRNA en cuanto a los errores segundo y tercero. En consecuencia, solicitó que atendiéramos el recurso de revisión judicial en cuestión de forma que validemos la inhibición de la Oficial Examinadora. El DRNA ripostó que, respecto al segundo y tercer señalamiento de error, reiteraba que no era necesario que este Tribunal se expresara. Ello, en la medida en que la pasada Secretaria renunció, era prerrogativa del nuevo Secretario atender la solicitud de descalificación de la Oficial Examinadora concernida.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

## A.

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. A.R.P.E.,* 167 DPR 684, 693 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida. Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véanse, además, *Super Asphalt v. AFI y otros*, 206 DPR 803 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581 (2020); *Román Ortiz v. OGPe*, 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[4] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Véase también, *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000).

Del mismo modo, las conclusiones de derecho y las interpretaciones que realizan las agencias sobre la ley que le corresponde administrar, a pesar de ser revisables en toda su extensión, deben sostenerse a nivel apelativo si estas son razonables, aunque haya alguna otra interpretación igualmente adecuada. *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 283 (2000); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 133 (1998).

Ahora bien, debido a que las resoluciones de los organismos administrativos se presumen correctas, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente

---

[4] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, a la pág. 728.

para derrotar la presunción que estas poseen. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

La *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico*, Ley Núm. 201–2003, según enmendada, 4 LPRA sec. 24 *et. seq.*, instituye la facultad revisora del Tribunal de Apelaciones. En asuntos de índole administrativo, dicha Ley nos circunscribe a examinar órdenes o resoluciones finales. Particularmente, el Artículo 4.006 (c), 4 LPRA sec. 24(y)(c) de la Ley Núm. 201–2003, dispone que el Tribunal de Apelaciones conocerá de los siguientes asuntos:

[...]

"[m]ediante recurso de revisión judicial, que se acogerá como cuestión de derecho, **de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas ...**" (Énfasis nuestro).

[...]

Cónsono con lo anterior, la Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 56, dispone que nuestra jurisdicción revisora se limita a determinaciones administrativas de carácter final.

Por otra parte, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, establece que una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones. Sec. 4.2 de la LPAU, 3 LPRA sec. 9672. Asimismo, dicha Sección expone, en lo pertinente:

> [...]
>
> **Una orden o resolución interlocutoria[5] de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.** (Énfasis nuestro).
>
> La revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de este capítulo.

Una orden o resolución final es aquella que culmina el procedimiento administrativo, tiene efectos sustanciales sobre las partes y resuelve todas las controversias ante la agencia; les pone fin, sin dejar pendiente una para ser decidida en el futuro. Es decir, es aquella que dispone del caso ante la agencia y tiene efectos adjudicativos y dispositivos sobre las partes. Esta culmina en forma final el procedimiento administrativo respecto a todas las controversias. *Comisionado Seguros v. Universal*, 167 DPR 21, 29-30 (2006). Como norma general, las decisiones administrativas que no culminen el procedimiento administrativo no son revisables judicialmente. Ello se conoce como la doctrina de agotamiento de remedios administrativos, una norma de autolimitación judicial de carácter fundamentalmente práctico. *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004). El propósito de esta restricción es dar cumplimiento a la política pública de que los procedimientos administrativos se efectúen de forma rápida, justa y económica. *Simpson y otro v. Consejo de Titulares*, 2024 TSPR 64, 213 DPR ____ (2024); Sec. 1.2 de la LPAU, 3 LPRA sec. 9602.

Conjuntamente, una determinación tampoco será revisable si la persona no agota todos los remedios administrativos disponibles ante la agencia previo a acudir a los tribunales. *Simpson y otro v.*

---

[5] Acción de la agencia que dispone de un asunto meramente procesal. Sec. 1.3 de la LPAU, 3 LPRA sec. 9603(i).

*Consejo de Titulares*, supra, citando a *AAA v. UIA*, 200 DPR 903, 913 (2018). Ahora bien, existen excepciones por la cuales se puede preterir el cauce administrativo. La Sec. 4.3 de la LPAU, 3 LPRA sec. 9673, establece lo siguiente sobre el relevo del agotamiento de remedios administrativos:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, **o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos**, o cuando sea un caso claro de falta de jurisdicción de la agencia, **o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa**. (Énfasis nuestro).

Por ende, si alguna de las mencionadas excepciones se desprende de un caso, se podrá obviar el trámite administrativo y el tribunal podrá conceder el remedio solicitado. Corresponde a la parte que pretende acudir al foro judicial probar, mediante hechos específicos y bien definidos, que se debe prescindir de los remedios administrativos. *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 DPR 42 (1993).

En *Simpson y otro v. Consejo de Titulares,* supra, el Tribunal Supremo de Puerto Rico puntualizó que, **aunque el requisito de finalidad de la acción administrativa y la doctrina de agotamiento de remedios son conceptos distintos, ambas doctrinas sirven un mismo propósito: evitar la intervención judicial a destiempo**. *Procuradora Paciente v. MCS*, supra, pág. 38. (Énfasis nuestro). Así, debido a que ambas doctrinas poseen un alcance análogo, pueden gozar de las mismas excepciones. *Íd.*

### C.

De otro lado, el *Reglamento de Procedimientos Administrativos del Departamento de Recursos Naturales y Ambientales de Puerto*

*Rico,* Reglamento Núm. 6442 de 26 de abril de 2002, rige los procedimientos adjudicativos que se lleven a cabo en el Departamento de Recursos Naturales y Ambientales al amparo de sus leyes habilitadoras y los reglamentos aplicables. En particular, el Artículo 20 de dicho Reglamento, intitulado *Inhibición y/o Recusación del Oficial Examinador,* dispone que:

20.1 *Causas de inhibición del oficial examinador*

El Oficial Examinador deberá inhibirse de realizar las funciones que proveen estos Artículos, respecto a cualquier asunto en el cual se produzca una de las siguientes situaciones:

a. Este interesado en un resultado, o tengan prejuicio o parcialidad personal hacia cualquiera de las partes o sus abogados.

b. ...

c. ...

d. ...

e. Por cualquier otra causa que; pueda razonablemente arrojar dudas sobre su imparcialidad para desempeñarse, o que tienda a minar la confianza pública en el sistema judicial.

Asimismo, el Art. 20.2 del Reglamento Núm. 6442 dispone quiénes podrán solicitar la inhibición o la recusación. En ese contexto, se establece que **el oficial examinador podrá inhibirse por iniciativa propia, exponiendo los motivos en que se fundamenta esta acción.** (Énfasis nuestro). Además, en cualquier etapa, cualquier parte podrá solicitar mediante moción de recusación que se descalifique del procedimiento al oficial examinador o a un miembro del panel examinador. La recusación deberá ser presentada tan pronto el peticionario advenga en conocimiento de la causa de la recusación.

Sobre la disposición de la solicitud de inhibición o la recusación, el Art. 20.3 del Reglamento Núm. 6442 expresa que una vez se presenta y notifica la solicitud de inhibición o la recusación,

ésta será evaluada y resuelta por el Jefe de la Agencia. De conceder la solicitud, realizará el reemplazo requerido con funcionarios cualificados que no se encuentren comprendidas en ninguna de las limitaciones dispuestas por el Artículo 20.1.

### III.

En primer orden, la norma de Derecho que impera en nuestro ordenamiento jurídico es que la revisión judicial de la denegatoria de una **petición de descalificación de un Oficial Examinador** procederá únicamente una vez la agencia adjudique el caso en sus méritos. *Com. Seg. v. Real Legacy Assurance*, 179 DPR 692, 716 (2010). No obstante, existen particularidades y/o excepciones que hacen posible actuar de una forma distinta a la norma general. ¿Qué sucede en casos en que se deniega la **solicitud de inhibición de un Oficial Examinador**? ¿Esa decisión es susceptible de revisión judicial previo a que la agencia emita su resolución final? ¿Resulta imprescindible agotar los remedios administrativos?

En su tercer señalamiento de error, la parte recurrente esboza que el DRNA actuó de forma *ultra vires* al declarar *No Ha Lugar* **la solicitud de inhibición** de la Oficial Examinadora, Lcda. María V. Ortega Ramírez, e imponerle la obligación de continuar presidiendo los procedimientos administrativos. Sobre este particular, pormenoriza que la reglamentación de la agencia no le permite al Jefe de Agencia rechazar una inhibición justificada realizada a iniciativa propia por la Oficial Examinadora. En esa dirección, resalta que la Regla 20.2 del Reglamento Núm. 6442 establece que la Oficial Examinadora se puede inhibir a iniciativa propia, luego de exponer los motivos en que se fundamenta dicha acción. Aduce que esa decisión es personalísima y que el Secretario/a de la agencia no tiene la potestad de imponer su criterio y obligar a la funcionaria a continuar con los procesos en contra de su discreción.

Por otro lado, la parte recurrida expone que este Foro no debe expresarse en torno al segundo y tercer señalamiento de error. Ello, por entender que, en la medida en que la pasada Secretaria renunció a su cargo, es prerrogativa del nuevo Secretario atender **la solicitud de descalificación** de la Oficial Examinadora. Es decir, propone que el nuevo Jefe de la Agencia puede atender o reconsiderar **la solicitud de descalificación** de la Oficial Examinadora a tenor con la Regla 20.3 del Reglamento Núm. 6442.

Luego de un análisis sereno y ponderado del expediente, concluimos que la situación que hoy se nos presenta hace posible preterir el cauce administrativo y atender el recurso de referencia. Nótese que lo que se nos trae a nuestra consideración es un asunto de estricto derecho, en el cual no es necesaria la pericia administrativa. A su vez, sería inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos que ello causaría. Conforme a los Artículos 4.2 y 4.3 de la LPAU y su jurisprudencia interpretativa, entre esta, *ORIL v. El Farmer, Inc.,* 204 DPR 229, 238 (2020), a manera de analogía, es forzoso concluir que este Foro tiene jurisdicción para revisar interlocutoriamente -y a modo de excepción- **la denegatoria de la inhibición de la Oficial Examinadora**.

Al no permitir la inhibición que *motu proprio* solicitó la funcionaria pública que lleva a cabo actividades cuasijudiciales al adjudicar controversias, podría verse trastocado el derecho básico de la parte recurrente a una adjudicación imparcial, así como el trámite de los procedimientos ante el DRNA. Esperar a la determinación final de la agencia para atender el recurso de autos dilataría los procedimientos e igualmente constituiría un esfuerzo fútil, toda vez que lo que se pretende al revisar la decisión concernida es que la Oficial Examinadora no continúe presidiendo el caso ante su clara expresión de que se le autorizara inhibirse. Lo

anterior cobra mayor fuerza al sopesar la conclusión de la Lcda. Ortega Ramírez con los Cánones de Ética Profesional y las disposiciones del Art. 20 del Reglamento Núm. 6442.[6]

Asimismo, es importante resaltar que en nuestro ordenamiento jurídico existe el poder de apreciación individual, el cual ciertamente conlleva un ejercicio de conciencia.[7] La determinación de inhibirse es una personalísima y se cimienta en las convicciones de la Oficial Examinadora. Por ende, colegimos que la Secretaria del DRNA no debió obviar la discreción que ostenta la Lcda. Ortega Ramírez para tomar la decisión de inhibirse luego de formular su sentir y más aún, expresar que lo hacía para evitar más dilaciones en los procedimientos administrativos.

En resumen, concluimos que la Secretaria, Lcda. Anaís Rodríguez Vega, erro y abusó de su discreción al dictar la *Resolución Interlocutoria* que declaró *no ha lugar* la inhibición *motu proprio* de la Oficial Examinadora. Valga puntualizar que a pesar de entender que la petición de inhibición de la entonces Secretaria al momento se ha tornado académica ante su renuncia, sus actuaciones al intervenir en la solicitud de inhibición de la Oficial Examinadora resultan en que hoy tengamos que intervenir en la misma.

Por último, las partes de epígrafe están de acuerdo en que el primer señalamiento de error se tornó académico, por razón de la

---

[6] "Al igual que un juez que lleva su ministerio en la Rama Judicial, el Juez Administrativo, al entender en una controversia, tiene que ser prudente, sereno, imparcial y cuidadoso; esforzándose al máximo de su capacidad para evitar hasta la apariencia de conducta impropia, aunque al así hacer conlleve sacrificios personales." *In re Moreno Cortés*, 159 DPR 542, 548 (2003), citando el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38.

[7] Véase, a modo de ejemplo, lo expresado en *Ramírez de Ferrer v. Marí Brás*, 142 DPR 941, 953 (1997), sobre las normas de inhibición de los Jueces del Tribunal Supremo de Puerto Rico. "[C]ada Juez integrante es, en esencia, la autoridad de última instancia sobre la determinación de su capacidad e imparcialidad sobre una controversia. Las normas de inhibición, tendentes a eliminar el potencial de prejuicio, arbitrariedad y a establecer las garantías de una decisión justa para las partes, imponen principios de conducta que van dirigidos a la conciencia judicial individual. En la gran mayoría de los casos en el seno de este Foro los Jueces han declarado su inhibición o su no intervención *sua sponte* sin mediar petición a los efectos. Siempre ha existido un total poder de apreciación individual sobre la procedencia de la inhibición formalmente solicitada ..."

renuncia de la Lcda. Rodríguez Vega a su cargo de Secretaria del DRNA, efectiva el 31 de diciembre de 2024. Así las cosas, no discutiremos este error. Asimismo, ante esta disposición del caso, se torna innecesaria la discusión del segundo señalamiento de error, sobre la denegatoria de la solicitud de descalificación y recusación de la Oficial Examinadora, Lcda. Ortega Ramírez.

### IV.

Por las razones que anteceden, se revoca el dictamen recurrido. En consecuencia, se devuelve el caso al DRNA para que se designe un Oficial Examinador sustituto de inmediato para presidir los procesos.

Se declara *No Ha Lugar* la *Solicitud de Desestimación* incoada por el Departamento de Recursos Naturales y Ambientales, representado por la Oficina del Procurador General de Puerto Rico.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La Jueza Rivera Marchand disiente mediante opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE APELACIONES**
**PANEL IV**

| | | |
|---|---|---|
| DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES <br> Recurrido <br><br> V. <br><br> JOSÉ DEL C. VARGAS CORTÉS, IRMA LLAVONA RIVERA Y LA SOCIEDAD DE BIENES GANANCIALES COMPUESTA POR AMBOS <br> Recurrente | KLRA202400547 | *Revisión Administrativa* procedente del Departamento de Recursos Naturales y Ambientales <br><br> Núm. 23-200-ZMT <br><br> Sobre: Infracción al Artículo 5(h) de la Ley 23 del 20 de junio de 1972, según enmendada, al Artículo 1.4 (Ch), 4.1, 4.2 y 4.3 del Reglamento 4860 de 29 de diciembre de 1992. Ley 241 del 15 de agosto de 1999, según enmendada y su Reglamento 6765 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

**VOTO DISIDENTE DE LA JUEZA RIVERA MARCHAND**

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Muy respetuosamente disiento de la determinación mayoritaria que revoca la *Resolución Interlocutoria* que notificó la entonces Secretaria del Departamento de Recursos Naturales y Ambientales de Puerto Rico (DRNA o recurrido) y descalifica a la Oficial Examinadora asignada a la querella administrativa de epígrafe. Luego de un análisis sosegado del expediente y del derecho aplicable, a la luz de los precedentes jurídicos, se concluye, distinto a la mayoría del panel, que no procede intervenir con la denegatoria de la solicitud de descalificación y recusación de la Oficial Examinadora. La adjudicación de dicho petitorio se encuentra dentro del ámbito de la discreción de la Secretaria del DRNA. Ello, en la medida que la función de un oficial examinador es emitir recomendaciones a la autoridad nominadora quien dentro de su

Número Identificador

SEN2025_____

sana discreción adjudica los méritos de la solicitud ante su consideración.[1] Al examinar la causa ante nos, se desprende que los asuntos traídos versan sobre asuntos que corresponden al manejo del caso en la etapa de descubrimiento de prueba según fue atendido por la Oficial Examinadora. En aras de considerar si los errores imputados por los recurrentes se cometieron procede que el correspondiente análisis debe realizarse estrictamente en función de los criterios que estableció el Tribunal Supremo en *ORIL v. El Farmer, Inc.*, 204 DPR 229 (2020).[2]

A esos efectos es pertinente puntualizar que, un oficial examinador, según lo define el Artículo 5(f) del Reglamento Núm. 6442, es la persona a quien el Secretario designa para presidir ante el DRNA los procedimientos adjudicativos. El Tribunal Supremo identificó en *Com. Seg. v. Real Legacy Assurance*, 179 DPR 692, 710-711 (2010), las siguientes funciones de los oficiales examinadores:

> [l]a figura del oficial examinador tiene a su cargo la crucial tarea de adjudicar los hechos en controversia durante el transcurso de la vista evidenciaria. Su cargo le exige recopilar, de manera integral, la evidencia presentada en los procedimientos; esto es, es el responsable de la formación del expediente administrativo. De aquí su importancia como partícipe de los procedimientos, pues queda de sí asegurar que se desarrolle un expediente administrativo que represente adecuadamente la postura de todas las partes. Recuérdese que a las partes le asiste el derecho de que su caso se adjudique única y exclusivamente a base de lo que contenga el expediente. Por ello, tiene el deber de desarrollar un expediente claro, con mucha conciencia y transparencia para que cuando el adjudicador examine el caso en sus méritos, pueda revisarlo completamente *de novo* sin ninguna dificultad. De esta forma se garantiza que el funcionario que tome la decisión final lo haga de manera independiente y objetiva, ateniéndose exclusivamente al expediente constituido mediante un proceso justo y libre de influencias.
>
> A esos efectos, está facultado para ordenar el descubrimiento de prueba, presidir la conferencia con antelación a la vista, determinar la evidencia que formará parte del expediente y emitirle al adjudicador

---

[1] Véase, el Artículo 29 del Reglamento Núm. 6442, *Reglamento de Procedimientos Administrativos del Departamento de Recursos Naturales y Ambientales de Puerto Rico*, de 26 de abril de 2002.

[2] A modo persuasivo, se citan los recursos recientes en donde esta Curia decidió no intervenir con el manejo del caso del foro primario y, sobre la solicitud de inhibición de un juez por lo que denegó la expedición del auto de *certiorari*. Entre otros: Recursos Núm. KLCE202401115, KLCE202401087, KLCE202401056 y KLCE202400815 y KLCE202401115.

una recomendación sobre la decisión que debe tomar a base de sus determinaciones de hecho y el derecho aplicable. (Notas omitidas.)

De manera que, su función es cuasi-judicial y así lo reconoce el Artículo 8 del Reglamento Núm. 6442 cuando dispone que, las partes, abogados, testigos y funcionarios gubernamentales deberán tener hacia el oficial examinador "la misma deferencia que merece un juez."

Sobre este asunto, el Tribunal Supremo expuso en *A.E.E. v. Rivera,* 167 DPR 201 (2006) que "[n]o debemos perder de perspectiva que los procedimientos ante las agencias administrativas deben ser ágiles y estar libres de escollos procesales innecesarios, de manera que se cumpla con el propósito cardinal de buscar la solución más justa, rápida y económica para las partes involucradas." *Íd.,* pág. 210.

Aclarado el rol que ejerce un oficial examinador, se procede a reseñar el detalle de las intervenciones y adjudicaciones de esta funcionaria en aras de justipreciar los méritos de la moción de descalificación y recusación, conforme el derecho aplicable. La causa de epígrafe se originó con la presentación de una *Querella* del DRNA en contra de los recurrentes.[3] En ella, el recurrido imputó a los recurrentes haber infringido el Reglamento Núm. 4860 de 29 de diciembre de 1992, intitulado *Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, los Terrenos Sumergidos Bajo Estas y la Zona Marítimo Terrestre.* Además, atribuyó a los recurrentes violentar la Ley Núm. 133 de 1 de julio de 1975, conocida como la *Ley de Bosques de Puerto Rico,* 12 LPRA secs. 191 *et seq.* y la Ley Núm. 241 de 15 de agosto de 1999, intitulada *Nueva Ley de Vida Silvestre de Puerto Rico,* 12 LPRA secs. 107 *et seq.* Lo antes, por presuntamente haber llevado a cabo



---

[3] Apéndice, págs. 97-103. Cabe indicar que, el DRNA enmendó la querella a los únicos fines de añadir como parte querellada a la sociedad legal de gananciales que componen el señor José del C. Vargas Cortés y la señora Irma Llavona Rivera. Apéndice, págs. 116

un depósito de relleno, corte de mangle y trabajos de construcción, sin los debidos permisos del DRNA.

En respuesta, los recurrentes acreditaron su *Contestación a Querella*[4] en la cual negaron la totalidad de las alegaciones instadas en su contra. Poco después, solicitaron convertir la Vista Administrativa -señalada para el 12 de septiembre de 2023- en una sobre el estado de los procedimientos.[5] En su escrito, solicitaron a la Oficial Examinadora ordenar al DRNA producir cierta prueba, luego de lo cual, se proponían deponer a los testigos anunciados.

En atención a lo anterior, la Oficial Examinadora accedió a lo solicitado por los recurrentes y convirtió el señalamiento en una vista sobre el estado de los procedimientos.[6] Sobre el descubrimiento de prueba, surge de la *Notificación* correspondiente que la Oficial Examinadora hizo constar que: "[a]mbas partes manifestaron su interés en un descubrimiento de prueba, el cual se calendarizó comenzando con la notificación de la querella enmendada y deberá concluirse para el 1 de diciembre de 2023, con la redacción y presentación del [I]nforme de Conferencia con Antelación a Vista y la celebración de la misma, el 5 de diciembre de 2023."[7]

Surge del expediente que, el 20 de octubre de 2023, los recurrentes instaron una *Solicitud de Orden para Descubrimiento de Prueba.*[8] En ella, informaron que el recurrido no ha producido ninguno de los documentos e información requerida. Evaluado lo anterior, la Oficial Examinadora emitió una *Notificación,* archivada en autos el 17 de noviembre de 2023, en la cual ordenó al DRNA cumplir con el descubrimiento de prueba. En particular hizo constar "[s]e les otorgó a las partes, un término razonable para el

---

[4] Apéndice, págs. 106-110.
[5] Apéndice, págs. 111-113.
[6] Apéndice, págs. 114-115.
[7] Apéndice, pág. 114.
[8] Apéndice, págs. 121-123.



descubrimiento de prueba, que no debería extenderse más allá de las fechas establecidas."[9]

En igual fecha, el DRNA instó una moción informativa en la cual adujo haber cumplido con lo ordenado sobre el descubrimiento de prueba y solicitó a la Oficial Examinadora que instruya a los recurrentes entregarle toda la evidencia y documentación en su poder, so pena de no poder presentar dicha evidencia durante la vista adjudicativa.[10] Separadamente, el recurrido interpeló la celebración de una inspección ocular.[11]

En respuesta, la Oficial Examinadora declaró ha lugar el petitorio del recurrido sobre el descubrimiento de prueba y, por tanto, ordenó a los recurrentes cumplir con la entrega de la documentación solicitada, previo a la fecha de presentación del *Informe de Conferencia con Antelación a Vista.*[12] Dejó pendiente la adjudicación de la solicitud de inspección ocular.

Obra en el expediente una *Moción Informativa y Solicitud de Conversión de Vista* mediante la cual el DRNA imploró convertir la vista señalada para el 5 de diciembre de 2023 en una sobre el estado de los procedimientos.[13] Ello, ante el incumplimiento de los recurrentes con el descubrimiento de prueba que ordenó la Oficial Examinadora y debido a que estos no han respondido al pliego de interrogatorios y al requerimiento de admisiones remitidos.

Evaluada la moción del DRNA, la Oficial Examinadora dejó sin efecto la Vista de Conferencia con Antelación a la Vista Administrativa señalada para el 5 de diciembre de 2023, la cual se negó a convertirla en una sobre el estado de los procedimientos. Lo antes, debido a que el correspondiente informe no había sido presentado. Se colige del referido dictamen que, otorgó a las partes "el término improrrogable de 10 días para que aquella parte que no ha cumplido con el descubrimiento de prueba, así lo haga, sujeto, a

---

[9] Apéndice, pág. 124.
[10] Apéndice, págs. 126-127.
[11] Apéndice, págs. 128-129.
[12] Apéndice, pág. 130.
[13] Apéndice, págs. 131-132.

sanciones. Se ordena a las partes presentar el Informe de la Conferencia con Antelación a Vista, el 19 de diciembre de 2023 y la Conferencia se llevará a cabo el 20 de diciembre de 2023."[14]

En reacción, el 6 de diciembre de 2023, los recurrentes instaron una *Moción Aclaratoria sobre Descubrimiento de Prueba y de Orden Protectora*.[15] Argumentaron que, el DRNA coartó su debido proceso de ley al presuntamente acortar los términos para descubrir prueba y al imponerles la obligación de presentar prueba para rebatir las alegaciones de la querella. Fundamentado en lo anterior, solicitaron una orden protectora con respecto al *Primer Pliego de Interrogatorios y Solicitud de Requerimiento de Admisiones*.

Evaluado lo anterior, la Oficial Examinadora emitió una *Notificación* el 12 de diciembre de 2023, archivada en autos el siguiente día, mediante la cual declaró no ha lugar la solicitud de orden protectora.[16] Hizo constar en su dictamen que, previo a esta moción, los recurrentes no habían planteado que debía limitarse el alcance del descubrimiento de prueba, ni los fundamentos que lo justificaban. Consideró, además, que los recurrentes no acompañaron su solicitud de orden protectora de una certificación que establezca los intentos *bonafide* realizados para resolver la controversia entre las partes sobre el descubrimiento de prueba, según lo requiere la Regla 34.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 34.1. Aseguró haber otorgado a las partes un término razonable para realizar el descubrimiento de prueba.

En cuanto al debido proceso de ley expuso que, en la esfera administrativa, su aplicación es menos rígida que en el ámbito penal, por lo cual, no es necesaria la celebración de una vista previa a la vista administrativa en su fondo. Por último, y fundamentado en el Artículo 27.7 del Reglamento Núm. 6442 dispuso que, una vez el DRNA establezca en la vista en los méritos un caso *prima facie* en



---

[14] Apéndice, págs. 133-134.
[15] Apéndice, págs. 136-144.
[16] Apéndice, págs. 145-153.

contra de los recurrentes, el peso de la prueba se revierte a estos últimos, quienes habrán de presentar sus defensas en torno a las alegaciones en su contra.

En cumplimiento con lo ordenado por la Oficial Examinadora, el DRNA instó -de forma independiente- el *Informe de Conferencia con Antelación a Vista (Parcial)* del cual surge la prueba documental, pericial y testifical que se propone presentar y las controversias de hechos que identificó.[17]

Por su parte, y a modo de reconsideración, los recurrentes presentaron una *Urgente Moción de Pronunciamiento sobre Descubrimiento de Prueba* en la cual reiteraron los fundamentos expuestos en su petitorio de orden protectora.[18] En particular, insistieron en su petitorio sobre ordenar al DRNA producir cierta prueba. Además, en ella consignaron que, a su entender, la *Notificación* que emitió la Oficial Examinadora el 12 de diciembre de 2023 "aparenta un tono adversativo y no adjudicativo[,] justo e imparcial que requiere reconsideración. El tracto del caso es claro, pero se ha omitido para coartar el derecho de la parte querellada para que pueda defenderse adecuadamente."[19]

Posteriormente, los recurrentes suplementaron la referida moción y, en ella, hicieron constar que la única prueba que el recurrido les remitió fueron los Informes de Intervención del Cuerpo de Vigilantes, el Informe Técnico del DRNA con fecha de 9 de junio de 2023 y una carta del Municipio de Lajas dirigida a la entonces Secretaria del DRNA.[20] Sobre tales bases argumentaron que, están imposibilitados de presentar su informe de conferencia con antelación a vista.

Así las cosas, el 22 de enero de 2024, los recurrentes instaron una *Moción de Prórroga u Orden Protectora*.[21] En ella, reiteraron su solicitud a la Oficial Examinadora de que emita una orden

---

[17] Apéndice, págs. 154-173.
[18] Apéndice, págs. 174-181.
[19] Apéndice, pág. 181.
[20] Apéndice, págs. 182-184.
[21] Apéndice, págs. 185-186.



protectora en cuanto al interrogatorio y al requerimiento de admisiones o, en su defecto, que les conceda treinta (30) días para responderlos. Obra en el expediente ante esta Curia una *Moción Informativa* que instaron los recurrentes de la cual se desprende que, remitieron al DRNA un pliego de interrogatorio, un requerimiento de admisiones y producción de documentos para ser contestado por el recurrido.[22] Además, notificaron haber entregado a dicha parte el *Informe Pericial Evaluación de la Condición Ambiental e Informe Técnico sobre Querella del DRNA Caseta Núm. 27 Bo. La Parguera, Lajas, Puerto Rico.*

En atención a lo anterior, la Oficial Examinadora dispuso:

> [s]e le concede a la parte querellada, el término de veinte (20) días, contados a partir de la fecha en que la parte querellante provea las contestaciones que se le han requerido, para que los querellados notifiquen sus contestaciones al Primer Pliego de Interrogatorio, [S]olicitud de Producción [d]e [D]ocumentos y Requerimiento de Admisiones.
>
> Se les recuerda a las partes, el esfuerzo que deben de hacer para que no se dilaten los procedimientos innecesariamente.[23]

El 31 de enero de 2024, el DRNA instó un petitorio de reconsideración con el objetivo de que la Oficial Examinadora ordene a los recurrentes contestar, de forma inmediata, los interrogatorios y la producción de documentos, remitidos a dicha parte desde el 22 de noviembre de 2023.[24] Solicitó, además, que dé por admitidos los requerimientos de admisiones que notificó a los recurrentes. Por último, instó a mantener la denegatoria de la orden protectora, tal cual la Oficial Examinadora ha decretado en tres ocasiones previas.

Examinado el petitorio de reconsideración, en consideración al trasfondo procesal del caso en esta etapa inicial de los procesos, la Oficial Examinadora resolvió lo siguiente:

> Se Ordena de nuevo a la parte querellada que presente su Informe de Conferencia con Antelación a Vista.



---

[22] Apéndice, págs. 187-189.
[23] Apéndice, pág. 190.
[24] Apéndice, págs. 191-201.

> Se Ordena de nuevo a la parte querellada que conteste los instrumentos de descubrimiento de pruebas que les fueron sometidos por el DRNA.
>
> Se advierte a la parte querellada, [que] deberá cumplir con ambas Órdenes antes descritas, sujeto a sanciones, dentro del término ya concedido, que continuará siendo de veinte (20) días contados a partir de la fecha en que el DRNA provea las contestaciones que se le han requerido.[25]

El 16 de febrero de 2024, el DRNA acreditó haber entregado a los recurrentes sus contestaciones a los documentos de descubrimiento de prueba remitidos.[26] Sin embargo, el 7 de marzo de 2024, el día en que se vencía el último término otorgado para contestar el descubrimiento de prueba, los recurrentes comparecieron y argumentaron que, el DRNA no proveyó la totalidad de las contestaciones a los interrogatorios y requerimientos. Sustentado en lo anterior, señalaron que, el término para ellos someter sus respectivas contestaciones no había comenzado.[27] Al mismo tiempo, suplicaron a la Oficial Examinadora que dejara sin efecto los términos impuestos, relacionados a la presentación de su informe de conferencia con antelación a vista, por entender que, resultaría prematura en esta etapa de los procedimientos. Por último, solicitaron que ordene al DRNA proveer las contestaciones a los requerimientos que faltan y que la Oficial Examinadora dé por admitidos los requerimientos no contestados.

En respuesta, la Oficial Examinadora emitió una *Notificación,* el 11 de marzo de 2024, en la cual expuso los remedios que tienen a su haber los recurrentes de tener objeciones en cuanto a las contestaciones al descubrimiento de prueba que les remitió el DRNA y la posibilidad de llamar al señor Eliezer Molina como su testigo luego de que el recurrido renunciara a sentarlo a declarar.[28] Con respecto a la contestación de los recurrentes al descubrimiento de la prueba que les remitió el DRNA, proveyó "un tercer y último

---

[25] Apéndice, págs. 202-205.
[26] Apéndice, pág. 208.
[27] Apéndice, págs. 211-215.
[28] Apéndice, págs. 216-219.

término de diez (10) días laborables para contestar los instrumentos de descubrimiento de prueba, de no hacerlo así, se le anotará la rebeldía."[29] Concedió igual término al recurrido para reaccionar a las alegaciones de los recurrentes en su escrito fechado el 7 de marzo de 2024.

El DRNA compareció y se opuso a la solicitud de toma de deposición de los recurrentes bajo el entendido de que dilataría los procesos sin producir información adicional a la previamente provista.[30] Surge del expediente que, los recurrentes no cumplieron con el término concedido, sino que solicitaron una prórroga adicional de siete (7) días, sin tampoco presentar sus contestaciones al descubrimiento de prueba dentro del plazo propuesto.[31]

En su consecuencia, el 4 de abril de 2024, la Oficial Examinadora anotó la rebeldía a los recurrentes, según advertido.[32] En desacuerdo, y en igual fecha, los recurrentes instaron un petitorio de reconsideración y allí cuestionaron la razonabilidad de la sanción contra ellos impuesta y acreditaron haber remitido al recurrido sus contestaciones al interrogatorio.[33]

Evaluado lo anterior, el 23 de abril de 2024, la Oficial Examinadora notificó su dictamen intitulado *Notificación sobre Moción de Reconsideración* mediante el cual levantó la rebeldía impuesta a los recurrentes y señaló la vista en su fondo para el 16 y 17 de marzo de 2024.[34] Debido a conflictos en el calendario, el 25 de abril de 2024, los recurrentes solicitaron a la Oficial Examinadora dejar sin efecto la vista en su fondo, emitir un nuevo señalamiento para una vista sobre el estado de los procedimientos y ordenar al DRNA cumplir con el descubrimiento de prueba pendiente.[35]

Posteriormente, el 9 de mayo de 2024, los recurrentes instaron una *Moción de Inhibición de la Secretaria del DRNA* y,

---



[29] Apéndice, pág. 217.
[30] Apéndice, págs. 220-221.
[31] Apéndice, págs. 222-224.
[32] Apéndice, págs. 225-227.
[33] Apéndice, págs. 228-239.
[34] Apéndice, págs. 240-248.
[35] Apéndice, págs. 249-254.

separadamente, una *Moción de Descalificación / Recusación de la Oficial Examinadora*. Imputaron a la Oficial Examinadora - de forma generalizada y sin ejemplos concretos- haber utilizado un tono, lenguaje y contenido adversativo, no adjudicativo en su *Notificación sobre Moción de Reconsideración*. Arguyeron que, la Oficial Examinadora prejuzgó que los argumentos de los recurrentes siempre eran de carácter dilatorio.

El 15 de mayo de 2024, la Oficial Examinadora dejó sin efecto la vista en su fondo y expuso que estará evaluando las solicitudes interpuestas por los querellantes.[36] A esos efectos, el 24 de junio de 2024, la Oficial Examinadora rindió su correspondiente *Informe de la Oficial Examinadora*[37] y allí hizo constar:

> En mis más de 27 años actuando como Oficial Examinadora, 30 como funcionaria pública, hasta las imputaciones y acusaciones recibidas en este caso, no había sido tan atacada en mi gestión profesional, como lo he sido en el caso de epígrafe, de parte del abogado de los querellados. Debe de haber un límite razonable y ético a la hora de representar los intereses de un cliente y no se puede bajo la alegación de "debido procedimiento de ley" tratar de controlar un caso y esperar o exigir que se acepten todas sus solicitudes a conveniencia y por los fundamentos que él entienda pertinente.
>
> A la solicitud de Descalificación y Recusación realizada por la representación legal de la parte querellada, recomendamos se declare NO HA LUGAR, por ser injusta, irrazonable e improcedente en derecho. No obstante, y para evitar que se sigan buscando excusas para dilatar este procedimiento administrativo, la suscribiente Oficial Examinadora, haciendo uso de su discreción SOLICITA SE LE AUTORICE A INHIBIRSE de la consideración de este caso. (Énfasis suprimido.)[38]

En atención a lo anterior, el 24 de julio de 2024, la Secretaria del DRNA notificó la *Resolución Interlocutoria* impugnada mediante la cual acogió el referido informe y denegó tanto la moción de descalificación y recusación como la solicitud de inhibición.[39] De conformidad, ordenó a la Oficial Examinadora continuar atendiendo el asunto de epígrafe.

---

[36] Apéndice, pág. 255.
[37] Apéndice, págs. 4-39.
[38] Apéndice, pág. 39.
[39] Apéndice, págs. 1-3.

En desacuerdo, los recurrentes instaron un petitorio de reconsideración.[40] Se reafirmaron en las causas de recusación e inhibición antes señaladas. Evaluado lo anterior, el Secretario Interino del DRNA se negó a reconsiderar.[41]

Insatisfechos, los recurrentes acuden ante esta Curia e imputan prejuicio, parcialidad y arbitrariedad a la Oficial Examinadora en el manejo de la *Querella* de epígrafe, en el tono presuntamente adversativo de sus dictámenes y por anotarles la rebeldía.[42] A esos efectos, resulta pertinente citar el Artículo 20.1 del Reglamento Núm. 6442 que enumera las causas de inhibición de un oficial examinador, a saber:

    a. Este interesado en un resultado, o tengan prejuicio o parcialidad personal hacia cualquiera de las partes o sus abogados.

    b. Tenga parentesco por consanguinidad o afinidad dentro del cuarto grado con cualesquiera de las partes o sus abogados.

    c. Tenga una relación de amistad de tal naturaleza con cualesquiera de las partes o sus abogados que pueda frustrar los fines de la justicia.

    d. Tenga que considerar hechos idénticos o relacionados con una situación pasada en la que fueron abogados o asesores de cualesquiera de las partes o sus abogados.

    e. Por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para desempeñarse, o que tienda a minar la confianza pública en el sistema judicial.

En cuanto a quiénes pueden solicitar la inhibición de un oficial examinador, el Artículo 20.2 del Reglamento Núm. 6442 establece que, este puede inhibirse por iniciativa propia -exponiendo los motivos que la fundamentan- o lo puede solicitar cualquier parte. Ante una solicitud de inhibición instada, por una parte, según el Artículo 20.3 del referido reglamento, le corresponde al jefe de agencia evaluar y resolver su procedencia.

De un examen sosegado del expediente y el informe de la Oficial Examinadora se observa que las expresiones allí expuestas

---

[40] Apéndice, págs. 62-78.
[41] Apéndice, págs. 79-80.
[42] Se toma conocimiento de la renuncia de la entonces Secretaria del DRN a su puesto lo cual torna académico el primer señalamiento de error del recurso ante nos.

no constituyeron una inhibición de forma fehaciente, como le permite hacer el Artículo 20.2 del Reglamento Núm. 6442. En su defecto, elaboró un pronunciamiento fundamentado en derecho, para concluir que, no procede la moción de descalificación y recusación como cuestión de derecho. Se constata que, al concluir con una solicitud a la Secretaria de que le autorice inhibirse resulta contradictorio y confuso con su postura anterior. De cualquier manera, y por virtud del Artículo 20.3 del Reglamento Núm. 6442, es el Secretario o la Secretaria del DRNA quien habrá de evaluar y resolver la procedencia de la solicitud de recusación de un oficial examinador que no se ha inhibido de forma voluntaria.

Resulta ilustrativo discutir que, la controversia en *ORIL v. El Farmer, Inc.*, supra, fue si este Tribunal tenía jurisdicción para revisar, de forma interlocutoria, la adjudicación de una agencia administrativa sobre una solicitud de descalificación de un abogado. A pesar de que el citado caso se circunscribe a la descalificación de un abogado, se colige que lo allí resuelto aplica a la descalificación de un oficial examinador por su ejecutoria en derecho. Al resolver, el Tribunal Supremo hizo constar que, "la mera presentación de la moción de descalificación [instada por la parte adversa] no conlleva automáticamente la concesión de la petición en cuestión." *Íd.*, pág. 242. A esos efectos, estableció como criterio medular a evaluar, ¿cuál fue la causa que dio paso a la descalificación? Adicionalmente, identificó otros factores que deberán sopesarse al adjudicar si procede una descalificación, a saber:

(i) si quien solicita la descalificación tiene legitimación activa para invocarla;

(ii) la gravedad de la posible violación ética involucrada;

(iii) la complejidad del derecho o los hechos pertinente a la controversia y el *expertise* de los abogados implicados;

(iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso[;] y

(v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. *Íd.*, citando a *Job*

Connection Center v. Sups. Econo, 185 DPR 585, 597-598 (2012).

Cónsono con lo antes esbozado, y por entender que descalificar a un abogado puede afectar negativamente los derechos de las partes y el trámite de los procedimientos, nuestro más Alto Foro dictaminó que, la descalificación de un abogado solo procederá cuando "sea estrictamente necesario, por considerarse un remedio drástico que se debe evitar si existen medidas menos onerosas que aseguren la integridad del proceso judicial y el trato justo a las partes." *Íd.*, pág. 244. Ante esa realidad, concluyó que, la procedencia de una moción de descalificación es un asunto de derecho. *Íd.*, pág. 249.

Al aplicar, por analogía, tales criterios al evaluar la solicitud de descalificación y recusación de la Oficial Examinadora objeto de este recurso, se hace referencia a los fundamentos que expusieron los recurrentes para sustentar su petitorio:

> [e]l tono, lenguaje y contenido [de la Notificación sobre Moción de Reconsideración] ratifican y dejan en clara evidencia que la Oficial Examinadora incurre en un patrón de conducta que infringe crasamente los derechos constitucionales de la parte querellada a un debido proceso de ley. Esto, por falta de un procedimiento justo e imparcial, totalmente selectivo y prejuzgado, que ha lacerado y minado la confianza de los querellados en el sistema de justicia.

Con ello en mente, se indaga la ejecutoria de la Oficial Examinadora a lo largo del año y medio que estuvo a cargo de esta *Querella,* con el propósito de identificar si infringió derechos constitucionales de los recurrentes, si actuó de forma arbitraria, si ignoró sus reclamos y si incurrió en la conducta que se le imputa. Cabe puntualizar que, el término arbitrariedad consiste en proceder solo por voluntad o capricho, en contra de la justicia, la razón o las leyes, sin que medie un razonamiento suficiente.[43]

Surge del expediente que, como parte del manejo del calendario sobre el asunto de epígrafe, la Oficial Examinadora



---

[43] Real Academia Española y Asociación de Academias de la Lengua Española: *Diccionario panhispánico del español jurídico,* 2023.

ordenó a las partes concluir el descubrimiento de prueba y presentar el *Informe de Conferencia con Antelación a Vista* para el 1 de diciembre de 2023. Se colige, además, que luego de varios requerimientos de la Oficial Examinadora y de al menos dos (2) prórrogas a esos efectos,[44] bajo apercibimiento de imponer sanciones, los recurrentes nunca rindieron su correspondiente *Informe de Conferencia con Antelación a Vista (Parcial)*. Ante los presuntos incumplimientos de los recurrentes de cumplir con los términos concedidos para contestar el descubrimiento de prueba y presentar su parte del *Informe de Conferencia con Antelación a Vista* según advertido, la Oficial Examinadora les anotó la rebeldía, la cual posteriormente dejó sin efecto tras estos acreditar haber contestado el pliego de interrogatorios.

Se colige del expediente que, la determinación de la Oficial Examinadora de denegar la solicitud de orden protectora que instaron los recurrentes, la cual requirieron en tres ocasiones, estuvo sustentada en derecho. En particular, al amparo de la Regla 34.1 de las Reglas de Procedimiento Civil, *supra,* ante la omisión de dicha parte de incluir una certificación que esboce los intentos *bonafide* de las partes por resolver las controversias relacionadas al descubrimiento de prueba.

De otra parte, la alegación de los recurrentes con respecto al presunto tono adversativo que utilizó la Oficial Examinadora en la *Notificación sobre Moción de Reconsideración* constituye una alegación carente de fundamento fáctico. Los recurrentes no cumplieron con el estándar dispuesto en *Com. Seg. v. Real Legacy Assurance,* supra, a los efectos de puntualizar cuál fue el presunto lenguaje prejuiciado que utilizó la Oficial Examinadora. La Oficial Examinadora detalló a lo largo de su dictamen los incumplimientos de los recurrentes a sus órdenes y, en respuesta a su petitorio de



---

[44] Apéndice, págs. 133-134, 202-205 y 216-219.

reconsideración, levantó la rebeldía previamente anotada sin imposición adicional alguna.[45]

Del expediente no se constata que la Oficial Examinadora haya ignorado los reclamos de los recurrentes y que pretendiera cohibirlos de realizar un descubrimiento de prueba. Por el contrario, y en particular a los recurrentes, les concedió tres (3) prórrogas para contestar el descubrimiento de prueba que les había remitido el DRNA. Además, luego de dos apercibimientos sobre sanciones, tal cual lo autoriza el Artículo 39 del Reglamento Núm. 6442,[46] y de un apercibimiento de anotar la rebeldía, ante su incumplimiento con las órdenes de la Oficial Examinadora, anotó a los recurrentes la rebeldía la cual, como anteriormente se expuso, poco después la dejó sin efecto tras advenir en conocimiento de que estos habían contestado el interrogatorio del recurrido.

Ante la renuncia del recurrido a utilizar al señor Eliezer Molina como testigo, los recurrentes interesaban que la Oficial Examinadora ordenara al DRNA descubrir las contestaciones bajo juramento que dicho testigo haya prestado. Sin embargo, la Oficial Examinadora comunicó a los recurrentes que el remedio que tiene ante estas circunstancias es sentar a declarar al señor Eliezer Molina.[47] Incluso, expuso los remedios alternos que tienen los

---

[45] A esos efectos, la Oficial Examinadora hizo constar que: "[...] No obstante la improcedencia en derecho de los planteamientos realizados por la representación legal de la parte querellada, así como todos los innuendos del abogado de la parte querellada, dirigidos directa e injustificadamente a las acciones procesales, en el caso de autos, de la Oficial Examinadora que suscribe, en pro de la transparencia del caso de epígrafe y en el ejercicio de mi discreción como Oficial Examinadora, SE LEVANTA la Anotación de Rebeldía a la Parte Querellada para la vista en su fondo señalada para los días 16 y 17 de mayo de 2024." (Énfasis en el original.) Apéndice, pág. 247.

[46] El Departamento podrá imponer sanciones, en su función cuasi judicial, en los siguientes casos:
1. Si el promovente de una acción, o el promovido por ella, dejare de cumplir con las reglas y reglamentos o con cualquier orden del Jefe de la Agencia, el Juez Administrador o del oficial examinador, la Agencia a iniciativa propia o a instancia de parte, podrá ordenarle que muestre causa por la cual no debe imponérsele una sanción económica a favor de la Agencia o de cualquier parte, que no excederá a [sic] doscientos ($200.00) dólares por cada imposición separada, a la parte o a su abogado, si este último es el responsable del incumplimiento.
2. Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la Agencia.

[47] Apéndice, págs. 216-219.

recurrentes a su haber para atender cualquier objeción en torno a las contestaciones que recibieron del recurrido.

De lo antes, se colige que, la moción de descalificación y recusación no procede como cuestión de derecho. Tampoco se identifica arbitrariedad ante unas determinaciones interlocutorias que responden a la necesidad de la Oficial Examinadora en el manejo del caso, de agilizar el trámite de la querella que, luego de año y medio, ni siquiera logró obtener un *Informe de Conferencia con Antelación a Vista* de ambas partes. Al amparo de las normas reglamentarias que regulan el descubrimiento de prueba, la Oficial Examinadora actuó dentro del margen de la discreción otorgada, por lo que, no se reúnen los criterios jurídicos que sostengan la revocación de la determinación administrativa impugnada.

Resulta necesario aclarar que, el funcionamiento efectivo de nuestro sistema judicial y la pronta disposición de los asuntos litigiosos hacen necesario que los funcionarios que presiden las vistas ostenten gran flexibilidad y discreción para lidiar diariamente con el manejo y la tramitación de los asuntos judiciales. *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Es por ello, que, a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 205 (2023).

Las actuaciones de la Oficial Examinadora -en el manejo del presente caso- caen dentro del ejercicio legal de sus poderes y facultades, en ausencia de arbitrariedad y parcialidad. La descalificación de un oficial examinador es un remedio drástico que no debe imponerse ligeramente. *Oril v. El Farmer, Inc.,* supra. Tras evaluar la presente solicitud de descalificación y recusación, a la luz de los criterios que estableció el Tribunal Supremo en el caso antes citado, se concluye que no existe una causa en derecho para descalificar o recusar a la Oficial Examinadora de continuar

atendiendo la *Querella* de epígrafe. Se reitera que, al denegar la solicitud de descalificación y recusación de la Oficial Examinadora, la entonces Secretaria del DRNA actuó dentro del ámbito de su discreción. Lo antes, no menoscaba ni prejuzga la facultad administrativa que ostenta el entrante Secretario o Secretaria del DRNA.

Por las razones que anteceden, respetuosamente disiento.

**MONSITA RIVERA MARCHAND**
**JUEZA DE APELACIONES**